

R. Rex Parris (SBN 96567)
    rrparris@parrislawyers.com
Alexander R. Wheeler (SBN 239541)
    awheeler@parrislawyers.com
Kitty K. Szeto (SBN 258136)
    kszeto@parrislawyers.com
Ryan A. Crist (SBN 316653)
    rcrist@parrislawyers.com
**PARRIS LAW FIRM**
43364 10th Street West
Lancaster, California 93534
Telephone:    (661) 949-2595
Facsimile:    (661) 949-7524

Attorneys for Plaintiff and the Putative Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

CHRISTINE CRUMP, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act;

        Plaintiff,

    v.

HYATT CORPORATION, an unknown business entity; and DOES 1 through 100, inclusive,

        Defendants.

Case No. 4:20-cv-00295-HSG

**CLASS ACTION**

**PLAINTIFF CHRISTINE CRUMP'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Date:      June 2, 2022
Time:     2:00 p.m.
Courtroom:  2

# TABLE OF CONTENTS

PAGE

NOTICE OF UNOPPOSED MOTION ........................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED.............................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

1. PROCEDURAL HISTORY AND FACTUAL BACKGROUND........................................ 3

2. SUMMARY OF THE SETTLEMENT TERMS ............................................................ 4

3. LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS .......... 4

    A. The Strength of the Case and Associated Risks Favor Preliminary Approval of the Settlement. .............................................................. 5

    B. The Settlement Resulted from Arm's Length Negotiations Based Upon Extensive Investigation and Discovery. ........................................ 8

    C. The Settlement Amount is Fair, Reasonable, and Adequate. ................................. 9

4. LEGAL STANDARD FOR ATTORNEYS' FEES AND IN A CLASS ACTION SETTLEMENT ........... 10

    A. AN UPWARD ADJUSTMENT OF THE NINTH CIRCUIT'S BENCHMARK IS APPROPRIATE ................................................................ 12

        1. The Risks Assumed by Class Counsel Favor the Fee Award Sought....... 13

        2. Class Counsel Obtained an Excellent Result for the Class...................... 14

        3. Class Counsel's Award is Relatively Modest......................................... 15

        4. Class Counsel Obtained Swift and Efficient Relief for the Class............. 15

        5. The Skill and Reputation of Class Counsel Justifies the Fee Requested.. 16

5. THE PROPOSED SETTLEMENT CLASS SATISFIES THE ELEMENTS FOR CLASS CERTIFICATION ................................................................ 17

6. THE PROPOSED NOTICE IS ADEQUATE........................................................... 20

7. APPOINTING PHOENIX CLASS ACTION ADMINISTRATION SOLUTIONS AS THE SETTLEMENT ADMINISTRATOR................................................ 21

8. THE CLASS REPRESENTATIVE INCENTIVE PAYMENT IS FAIR AND REASONABLE................ 22

9. CONCLUSION.................................................................. 24

i

## TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135 ............. 6

*Allapattah Services, Inc. v. Exxon Corp.*, 454 F.Supp. 2d 1185, 1217 (S.D.Fla. 2006) .............. 15

*Armstrong v. Whirlpool Corp.*, 2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) .................... 16

*Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F.Supp. 1195 (S.D.N.Y. 1979),

    *aff'd* 622 F.2d 1106 (2nd Cir. 1980) ...................................................... 20

*Blum v. Stenson* (1984) 465 U.S. 886 ............................................................... 12, 14

*Boeing Co. v. Van Gernert* (1980) 444 U.S. 472 ............................................... passim

*Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*, No. 12-CV-05259-JST, 2014 WL

    2967474, at *3 (N.D. Cal. June 30, 2014) ................................................ 25

*Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913–14 (S.D.Ohio 2001) ........................... 26

*Brytus v. Spang & Co.* (3rd Cir. 2000) 203 F.3d 238 ............................................. 13

*Cartt v. Superior Court* (1975) 50 Cal.App.3d 960 ........................................... 22, 23

*City of Detroit v. Grinnell Corporation* (2d Cir. 1974) 495 F.2d 448 ........................... 5

*Crampton v. Takegoshi* (1993) 17 Cal.App.4th 308 ............................................ 10

*Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968) .................................... 14

*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794 .................................... 4, 5, 6, 10

*Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *7 (C.D. Cal.

    June 13, 2013) .......................................................................... 26

*Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1006-1008 (9th Cir. 2002) .. 20, 21

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, *17

    (Apr. 22, 2010) ......................................................................... 25

*Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, *16 (N.D. Cal. Jan. 26, 2007) ........... 15

*Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1026; *Class Plaintiffs v. City of Seattle*

    (9th Cir. 1982) 955 F.2d 1268 ..................................................... 4, 6, 17

*Hensley v. Eckerhart* (1983) 461 U.S. 424 ....................................................... 9

ii

*Holman v. Experian Info. Solutions, Inc.*, No. 11-CV-0180 CW (DMR), 2014 WL 7186207, at *6 (N.D. Cal. Dec. 12, 2014) ................................................................................................ 25

*In re Activision Securities Litigation* (9th Cir. 1989) 723 F.Supp. 1373 ......................... 12, 14, 19

*In re American Bank Note Holographies, Inc., Securities Litigation* (S.D.N.Y. 2001) 127 F.Supp.2d 418 .................................................................................................................. 8

*In re Ampicillin Antitrust Litigation*, 526 F. Supp. 494 (D.D.C. 1981) ...................................... 20

*In re Buspirone Patent & Antitrust Litig.*, MDL No. 1413, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) ........................................................................................................ 20

*In re Cardizem CD Antitrust Litig.*, No. 99-73259 (E.D. Mich. Nov. 25, 2002) ......................... 20

*In re Interpublic Sec. Litig.*, No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *30-31 (S.D.N.Y. Oct. 27, 2004) ....................................................................................................... 14

*In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068, at *35 (E.D.N.Y. Aug. 25, 2005) ................................................................................. 18

*In re Linerboard Antitrust Litigation*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at * 49 (E.D. Pa. June 2, 2004) ........................................................................................................... 20

*In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379 (9th Cir. 1995) ................... 14, 19

*In re Relafen Antitrust Litig.*, 1:01cv12239-WGY, (Order and Final Judgment dated Apr 9, 2004, D. Mass.) ............................................................................................................................... 20

*In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ................... 24

*In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) .... 16, 18, 21

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ................................... 24, 25

*Kerr v. Screen Extras Guild, Inc.* (9th Cir. 1975) 526 F.2d 67 .............................................. 11, 12

*Ketchum v. Moses* (2001) 24 Cal. 4th 1122 ................................................................................ 9

*Laffitte v. Robert Half International, Inc.* (2014) 231 Cal.App.4th 860 ...................................... 13

*Lealao v. Beneficial Cal., Inc.* (2000) 82 Cal.App.4th 19 ......................................................... 9, 13, 20

*Lindy Bros. Bldrs., Inc. of Phila. v. American R. & R. San Corp.* (3rd Cir. 1973) 487 F.2d 161  11

*Lindy II* (1976) 540 F.2d 102 ..................................................................................................... 11

iii

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2006) .......................... 15

*Mendoza v. United States* (9th Cir. 1980) 623 F.2d 1338 ................................................. 22

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) .................................................... 14

*Nichols v. Smithkline Beecham Corp.*, No. Civ. A. 00-6222, 2005 WL 950616, at *24 (E.D. Pa.
Apr. 22, 2005) .......................................................................................... 20

*North Shore Hematology-Oncology Assoc., P.C. v. Bristol-Myers Squibb Co.*, No. 04 Civ. 248
(D.D.C. Nov. 30, 2004) .................................................................................. 20

*Officers for Justice v. Civil Service Commission of City and County of San Francisco* (9th Cir.
1982) 688 F.2d 615 ...................................................................................... 5

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ..................... 14, 16

*Razilov v. Nationwide Mut. Ins. Co.,* No. 01-CV-1466-BR, 2006 WL 3312024, at *4 (D. Or.
Nov. 13, 2006) .......................................................................................... 25

*Serrano v. Priest* (1977) 20 Cal.3d 25 .................................................................. 10

*Singer v. Becton Dickinson and Co.*, 08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal.
June 1, 2010) ........................................................................................... 26

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). 13, 14, 15

*Smith v. CRST Van Expedited, Inc.,* No. 10-CV-1116- IEG WMC, 2013 WL 163293, at *6 (S.D.
Cal. Jan. 14, 2013) ..................................................................................... 26

*Trustees v. Greenough* (1881) 105 U.S. 527 ............................................................. 11

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 297-298 (N.D.Cal. 1995) ....... 19, 25, 26

*Vincent v. Hughes Air West, Inc.* (9th Cir. 1977) 557 F.2d 759 ........................................ 10

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ................................ passim

*Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995) ........................ 19, 24

*Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999)......... 15

*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224 ...................................... 4, 5, 6, 13

*Williams v. MGM-Pathe Communications*, 129 F.3d 1026, 1026-27 (9th Cir. 1997)................. 15

*Winslow v. Harold G. Ferguson Corp.* (1944) 25 Cal.2d 274 ........................................... 12

*Young v. Polo Retail, LLC*, 2007 WL 951821, *8 (N.D. Cal. 2007) ................................... 15

iv

1

**Other Authorities**

Conte & Newberg, *Newberg on Class Actions* § 11.24 (4th Ed)........................................... passim

*Manual for Complex Litigation* § 21.311 at p. 413 (4th ed. 2007) ................................... 11, 22

R. Pearle, California Attorney Fee Awards (CEB, 1993) §7A ................................................... 10

See A. Conte, *Attorney Fee Awards*, 2nd Ed. 1993 ................................................................. 11

Weil and Brown, <u>California Practice Guide</u>, *Civil Procedure Before Trial*, Chapter 14, section

   14:145 .............................................................................................................................. 10

**Statutes**

Cal. Civ. Code § 1781 ........................................................................................................ 4, 22

Cal. Civ. Code § 1781 (f)......................................................................................................... 4

**Rules**

Cal. R. Ct. 3.769(g) ................................................................................................................ 5

Fed. R. Civ. P. 23(c)(2) and 23(e)........................................................................................ 23

v

## NOTICE OF UNOPPOSED MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 2, 2022, at 2:00 p.m., or as soon thereafter as this matter may be heard before the Honorable Haywood S. Gilliam, Jr. in Courtroom 2 of the above-entitled court located at 1301 Clay Street, Oakland, California 94612, Plaintiff Christine Crump ("Plaintiff") will seek an order:

- Granting preliminary approval of the proposed all-in, non-reversionary **$990,000.00** class action settlement as described herein and as set forth in the parties' Joint Stipulation of Class Action Settlement and Release of Claims ("Settlement Agreement") attached as **Exhibit "1"** to the Declaration of Kitty K. Szeto filed concurrently herewith ("Szeto Decl.");

- Approving the Notice of Class Action Settlement ("Notice"), Request for Exclusion, and Proposed Second Amended Complaint attached as Exhibits "A-C" to the Settlement Agreement;

- Appointing Phoenix Class Action Administration Solutions ("Phoenix") as the Settlement Administrator and preliminarily approving settlement administration costs in the amount of **$85,000**;

- Directing Phoenix to mail the Notice and Request for Exclusion to the Class;

- Preliminarily approving Class Counsel's request for attorneys' fees in the amount of **$346,500** and request for reimbursement of litigation costs and expenses in the amount of **$100,000**;

- Preliminarily approving a **$10,000** Class Representative Incentive Payment to Plaintiff; and

- Scheduling a hearing on **September 8, 2022** to consider final approval of the proposed settlement.

/ / / /

/ / / /

1

1    This motion is based on the following memorandum of points and authorities; the

2    Declarations of Kitty K. Szeto and Christine Crump in support thereof; the [Proposed] Order

3    lodged together with this motion, as well as upon the pleadings and other records on file with the

4    Court in this matter, and upon such documentary evidence and oral argument as may be

5    presented at or before the hearing on this motion.

6    <u>**STATEMENT OF ISSUES TO BE DECIDED**</u>

7    Whether to grant preliminary approval of the Joint Stipulation of Class Action Settlement

8    and Release of Claims.

9    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

10    Plaintiff Christine Crump ("Plaintiff") seeks preliminary approval of an all-in, non-

11    reversionary class action settlement fund.  Subject to court approval, Defendant Hyatt

12    Corporation ("Defendant") has agreed to pay a total maximum settlement fund of **$990,000.00**

13    ("Gross Settlement Amount") in exchange for a release of claims limited to the facts and theory

14    that Defendant maintained a timekeeping system that unlawfully rounded the class members time

15    worked from December 6, 2015 through June 9, 2019 when Defendant stopped its rounding

16    practice.  After deducting payment of attorneys' fees ($346,500) and costs ($100,000) to Class

17    Counsel, the costs of settlement administration ($85,000), and Class Representative Incentive

18    Payment ($10,000), a Net Settlement Amount of approximately $411,000 will be automatically

19    paid out to Settlement Class Members without the need to submit a claim form.  This hotly-

20    contested class action has been actively litigated for over a year and involved ongoing

21    investigations, the exchange of written discovery and the analysis of documents, taking and

22    defending depositions, a partially briefed motion for class certification, expert depositions, ,

23    attending an arms-length mediation, and post-mediation settlement negotiations.  Accordingly,

24    the **$990,000.00** Settlement is fair, reasonable, and adequate and the Court should grant

25    preliminary approval.

26    / / / /

27    / / / /

28

2

1    **1.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

2           On December 6, 2019, Plaintiff filed her original Complaint against Defendant on behalf

3    of the Class. The Complaint was removed to federal court based on jurisdiction under the Class

4    Action Fairness Act. On August 5, 2020, Plaintiff filed a First Amended Complaint on behalf of

5    the Class. Plaintiff asserted nine causes of action in her First Amended Complaint against

6    Defendant: (1) "Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period

7    Premiums)"; (2) "Violation of California Labor Code §§ 226.7 (Unpaid Rest Period Premiums)";

8    (3) "Violation of California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wages)";

9    (4) "Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid)"; (5)

10   "Violation of California Labor Code § 204 (Wages Not Timely Paid During Employment)"; (6)

11   "Violation of California Labor Code §226(a) (Non-Complaint Wage Statements)"; (7) "Violation

12   of California Labor Code § 1174(d) (Failure To Keep Requisite Payroll Records)"; (8)

13   "Violation of California Business & Professions Code §§ 17200, et seq."; and (9) "Violation of

14   California Labor Code § 2698, et seq.(California Labor Code Private Attorney General Act of

15   2004)." Like the original Complaint, the First Amended Complaint sought unpaid wages, actual

16   damages, statutory damages, monetary damages, interest, statutory penalties, civil penalties,

17   liquidated damages, restitution, declaratory and injunctive relief, equitable relief, pre-judgment

18   interest, and attorneys' fees and costs.

19          During the litigation of this Action, the Parties have engaged in extensive written

20   discovery. Defendant served a Notice of Oral Deposition and completed Plaintiff's deposition.

21   Defendant also served a Demand for Production of Documents, and received documents from

22   Plaintiff. Plaintiff also propounded multiple sets of Interrogatories and Demands for Production

23   against Defendant, and received responses from Defendant.  Plaintiff served a notice of

24   deposition of Defendant under Rule 30(b)(6), and completed that deposition.  The parties also

25   took the depositions of various expert witnesses and class declarants.

26          Class Counsel investigated the claims against Defendant in the Action and also analyzed

27   all applicable defenses raised by Defendant.  The investigation included review of documents

28

produced during discovery, deposition of Plaintiff, deposition of Defendant's corporate witness, depositions of putative class member declarants, depositions of Plaintiff's retained experts, several conferences between Class Counsel and Defendant's Counsel, conferences between the Parties and the Court, and Class Counsel's further interviews of the Class Representative and other Class Members. Class Counsel believed it had obtained enough information to file a Motion for Class Certification and subsequently filed a Motion for Class Certification on May 6, 2021. Similarly, Defendant's Counsel similarly believes it had obtained enough information to file an Opposition to Plaintiff's Motion for Class Certification, which it filed on July 15, 2021.

On July 20, 2021, the parties participated in a full day of mediation with Paul Grossman, Esq., a well-respected class and representative action mediator. While the case did not settle at the mediation, the parties continued settlement negotiations with the assistance of the mediator and ultimately reached the Settlement.

**2.    SUMMARY OF THE SETTLEMENT TERMS**

Under the terms of the Settlement, Defendant shall pay a Gross Settlement Amount of **$990,000.00**. All funds remaining after deduction of the Class Representative Incentive Payment ($10,000), Attorneys' Fees ($346,500), Costs ($100,000), the LWDA Payment ($37,500), and Settlement Administration Costs ($85,000) resulting in a net settlement amount of $411,000 ("Net Settlement Amount") shall be automatically paid out to all Settlement Class Members who do not opt out, without them having to submit a claim form.

If the Court approves all of the requested allocations and deductions, the Net Settlement Amount of $411,000 shall be distributed to Settlement Class Members on a pro-rata basis based on the number of Weeks Worked.

**3.    LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS**

Fed. R. Civ. P. 23(e) requires that a court engage in a two-step process when considering whether to approve the settlement of a class action. First, it must make a preliminary determination whether the proposed settlement "is fundamentally fair, adequate, and

1  reasonable." *Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007).  At this stage, "the

2  settlement need only be potentially fair."  *Id*.  In the second step of the process -- which occurs

3  after preliminary approval, notification to class members and the compilation of information as

4  to any objections by class members -- a court determines whether final approval of the settlement

5  should be granted.

6     A court is to consider and evaluate several factors as part of its assessment of the

7  appropriateness of a proposed settlement.  The Ninth Circuit has identified the following non-

8  exclusive ones that may be considered during both the preliminary and final approval processes:

9     1) the strength of the plaintiff's case;

10     2) the risk, expense, complexity and likely duration of further litigation;

11     3) the risk of maintaining class action status throughout the trial;

12     4) the amount offered in settlement;

13     5) the extent of discovery completed and the stage of the proceedings;

14     6) the experience and view of counsel;

15     7) the presence of a governmental participant; and

16     8) the reaction of the class members to the proposed settlement.

17  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

18     Each of these factors does not necessarily apply to every class action settlement. Further,

19  other factors may apply in evaluating a proposed settlement in a particular case. For example,

20  courts often consider whether the settlement is the product of arm's length negotiations. See

21  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of

22  stock in the product of an arms-length, non-collusive, negotiated resolution").

23     A.   **The Strength of the Case and Associated Risks Favor Preliminary Approval**

24     **of the Settlement.**

25     Hyatt maintained a state-wide policy of rounding the employees' hours against them.

26  Dkt. 46-6, Ex. I (Cornwell Depo. at 192:15–193:21).  Instead of paying the employees for their

27  actual time on the clock, Hyatt would automatically manipulate the employees' punch times to

28

5

round the class members' time "to the nearest quarter hour." *Id*. at 178:2–4.  Specifically, Hyatt "rounded the hourly employee's time and didn't pay actual punch time." *Id*. at 188:14–19. Instead, it used the rounded time to calculate hours and to generate pay.  *Id*. at 216:8–19.  This policy applied to every hotel in California.  *Id*. at 192:15–193:21. The "clocking in and out policy" is also "the same at all locations." *Id*. at 129:7–10. Moreover, each and every hotel also uses the exact same Kronos timekeeping system in which the rounding function was used.  *Id*. at 171:13–172:22.

When asked to review Plaintiff's time records, Hyatt's Rule 30(b)(6) witness confirmed this policy unfairly rounded Plaintiff's 2:30 start time against her and shorted her eight minutes of wages:

Q: She punched in at 2:24 to start working, right?

A: Yes.

Q: And actually punched in two minutes past her scheduled end time, correct?

A: Yes.

Q: So an extra eight minutes of work, correct?

A: Yes.

Q: But she was only paid for eight hours as opposed to eight hours and eight minutes, correct?

A: Yes.

Dkt. 46-6, Ex. I (Cornwell Depo. at 187:17–188:13) (reviewing Dkt. 46-6, Ex. E).

Hyatt's rounding policy is not neutral for several reasons.  For example, prior to June 1 2019, hourly employees were not allowed to clock-in more than seven minutes before the start of their scheduled shifts. Dkt. 46-6, Ex. I (Cornwell Depo. at 173:19–174:14).  In fact, employees were physically unable to clock-in because the timekeeping system would automatically deny employees' attempts to clock-in if they attempted to clock in seven or more minutes before the start of their scheduled shifts.  *Id*. at 175:20–176:6 ("The system itself would not allow for anybody to log in.")  When asked if employees could clock-in outside their rigid schedule, he

6

said, "[n]ot without going to their supervisor to – to override that. So the supervisor could change the schedule in the system, and then they could clock in." *Id.* If an employee tried to clock-in early, Hyatt's time clock system automatically sent a prompt stating, "You cannot clock in more than 7 minutes before your scheduled start time." Dkt. 46-6, Ex. D. This policy has existed since before the class period. Dkt. 46-6, Ex. I (Cornwell Depo. at 174:10–14).

In June 2019, Hyatt changed its policy in an attempt to avoid unfairly rounding the class members' hours. "Beginning on Sunday, June 2, Hyatt will change to minute-to-minute pay in our Kronos time clock system. This means the clock will no longer be rounded to the quarter hour. Instead, we will be paid for the actual minutes that we are clocked-in." Dkt. 46-6, Ex. F; *see also* Dkt. 46-6, Ex. I (Cornwell Depo. at 188:20– 189:10). Hyatt provided notice to all California hotels that it was changing its policy so that "whenever you clocked in and clocked out [] Hyatt will pay you for [it]." *Id.* at 194:18–195:14.

On May 6, 2021, Plaintiff moved to certify a Rounding Class of all current and former hourly-paid or non-exempt employees who worked for Defendant within the State of California at any time during the period from December 6, 2015 to June 1, 2019. Nevertheless, Class Counsel recognized the risk of potentially not obtaining class certification with the case proceeding on an individual basis. And, a settlement of this considerable monetary amount is preferable to the multi-tiered risks associated with proceeding with trial and a likely appeal, and is in the class members' best interests. If Plaintiff were to have rejected this close to million dollar common fund settlement, the case would have to be certified, survive decertification, and proceed through trial. As with all trials, there is considerable risk for both sides, and that risk is amplified for both sides when the case involves 15,900 class members.

Were Plaintiff to succeed in prevailing at a class-action jury trial, the resulting money judgment would likely be subject to many rounds of appeals, where, again, both sides would face considerable risk – for Plaintiff his hard-fought jury verdict could be overturned, as could a favorable ruling for the defense. In addition, money judgments must be bonded, and interest accrues during the pendency of appeal. The Class Members still would not have yet received

any money during the appeal process, and Class Counsel could have to spend years defending its judgment in possibly several rounds of appeal.

While there are considerable risks associated with a class action trial and resulting appeals, Class Counsel has taken class action cases all the way to the jury trial phase, and stood (and stand) ready and willing to do so again in this case. That said, when presented with a settlement that will benefit the entire class in the very near future, the risk of later potentially recovering nothing, many years later, must be candidly recognized and evaluated. For those reasons, Class Counsel is confident this proposed settlement is in the best interest of the Class.

**B.   <u>The Settlement Resulted from Arm's Length Negotiations Based Upon Extensive Investigation and Discovery.</u>**

The parties have actively litigated this case since it was initially filed on December 6, 2019. There have been ongoing investigations and the exchange of discovery including numerous class member and expert depositions and numerous documents and time punch data analysis. Furthermore, the parties engaged in an arm's length mediation with countless hours of post-mediation settlement discussions with Paul Grossman, Esq., a very well respected, experienced mediator who specializes in resolving wage-and-hour class actions.

During the mediation, the parties exchanged information and discussed all aspects of the case including the risks and delays of further litigation, the risks to both parties, the evidence produced and analyzed, and the possibility of a trial and resulting appeals, among other things. During all settlement discussions, the parties conducted their negotiations at arms' length in an adversarial posture. Arriving at a settlement that was acceptable to both parties was not easy. Defendant and its counsel felt very strongly about Defendant's ability to prevail on the merits at trial. And, Class Counsel believed that they would prevail at trial.

The parties heavily litigated the case up until the settlement was reached. After much consideration by the parties as to their respective positions and risks in continued litigation, the parties agreed that this case was well suited for settlement given the costs and risks both sides faced in further, very protracted litigation. The proposed Settlement takes into account the

1   strengths and weaknesses of each side's position and the uncertainty of how the case might have

2   concluded at trial.  The proposed Settlement is based on this incredibly large volume of facts,

3   evidence, and investigation.

4         **C.    <u>The Settlement Amount is Fair, Reasonable, and Adequate.</u>**

5         On April 5, 2021, Defendant produced a random sampling of timekeeping data for 1,635

6   putative class members who worked 590,189 shifts between December 6, 2015 and August 28,

7   2020.  This sample was intended to be a 10% random sample of the putative class members.

8   Based on Plaintiff's expert, Dr. Kriegler's, rounding analysis, 65.7% of the sampled employees

9   were potentially underpaid.  Dkt. 46-4 at ¶ 79.  Specifically, there were a total of 7,384.14 unpaid

10  weighted hours due to Hyatt's rounding mechanism and 4,904 unweighted hours.  *Id*.  When

11  extrapolating this 10% sample across the entire class, this equates to approximately $860,161.60

12  to $1,298,131.81 in underpayment.  Szeto Decl. at ¶ 8.

13        The Gross Settlement Amount of $990,000.00 represents approximately 76% of the

14  weighted underpaid hours if the Court granted certification and the Class Members prevailed at

15  trial and succeeded on all subsequent appeals.  There is no reason to doubt the fairness of the

16  proposed plan of allocation of the settlement funds for purposes of preliminary approval.  Even

17  at the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis

18  [to warrant approval], particularly if recommended by experienced and competent class

19  counsel."  *In re American Bank Note Holographies, Inc., Securities Litigation* (S.D.N.Y. 2001)

20  127 F.Supp.2d 418, 429-30.

21        In light of the potential risk of certification and the possibility of a defense verdict, Class

22  Counsel believes that the $990,000.00 Gross Settlement Amount is within a reasonable range

23  given the uncertainties of success as well as the costs that would have been associated with a trial

24  of this action.  Further, the $990,000.00 Gross Settlement Amount was the result of arms' length

25  negotiations with an experienced mediator.  Although the recommendations of Class Counsel are

26  not conclusive, the Court can properly take the recommendations of counsel into account,

27  particularly where, as here, Class Counsel is competent, has experience with this type of

28

9

1    litigation, and significant discovery and investigation has been completed. *Newberg* §11.47.

2    Accordingly, the Settlement as a whole is fair, reasonable, in the best interest of the Class

3    Members and the Court should grant preliminary approval.

4    **4.    LEGAL STANDARD FOR ATTORNEYS' FEES AND IN A CLASS ACTION SETTLEMENT**

5        Class Counsel seeks approval of an attorneys' fee award equal to 35% of the total value

6    of the settlement fund established by the settlement agreement.  An award of attorneys' fees as

7    a percentage of a fund established by a settlement is well-established in Ninth Circuit

8    jurisprudence; the Ninth Circuit's benchmark for such common fund awards is 25% of the

9    common fund.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six*

10   *Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul,*

11   *Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Pacific Enterprises*

12   *Security Litigation*, 47 F.3d 373, 379 (9th Cir. 1995); *In re Activision Securities Litigation*, 723

13   F. Supp. 1373, 1375 (N.D. Cal. 1989).

14       This "common fund" doctrine, under which attorneys who create a common fund or

15   benefit for a group of persons may be awarded their fees and costs out of the fund, has long been

16   a staple of class action settlements in federal courts generally: "a lawyer who recovers a common

17   fund for the benefit of persons other than…his client is entitled to a reasonable attorney's fee

18   from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v.*

19   *Electric Auto-Lite Co.*, 396 U.S. 375 (1970).[1]  Federal courts, and particularly the Ninth Circuit,

20   have endorsed the percentage method as a fair way to calculate a reasonable fee when

21   contingency fee litigation has produced a common fund.  *See*, *e.g.*, *Blum v. Stenson*, 465 U.S.

22   886, 900 n.16 (1984) (under common fund doctrine, "reasonable fee is based on a percentage of

23   the fund bestowed on the class"); *Six Mexican Workers*, 904 F.2d at 1311 (common fund fee is

24

25   _____

26   [1]     The common fund doctrine rests on the understanding that attorneys should normally be paid by their
27   clients, and that unless attorneys' fees are paid out of the common fund where the attorneys' unnamed class member
     "clients" have no express retainer agreement, those who benefited from the fund without contributing to those who
28   created it would be unjustly enriched.  *Boeing*, 444 U.S. at 478.

1  generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt v.*
2  *Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

3         Courts have recognized that, in addition to providing just compensation, awards of fair
4  attorneys' fees from a common fund should also serve to encourage skilled counsel to represent
5  those who seek redress for damages inflicted on entire classes of persons, and to discourage
6  future alleged misconduct of a similar nature. *See, e.g., Dolgow v. Anderson*, 43 F.R.D. 472,
7  481-84 (E.D.N.Y. 1968).  Courts in this Circuit have consistently adhered to these teachings.
8  *See In re Interpublic Sec. Litig.*, No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *30-31
9  (S.D.N.Y. Oct. 27, 2004) ("It is well established that where an attorney creates a common fund
10  from which members of a class are compensated for a common injury, the attorneys who created
11  the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'")
12  (citation omitted).  The "[d]etermination of 'reasonableness' is within the discretion of the
13  district court." *Id* at *31.

14         The Ninth Circuit has made clear that when a fund is established which makes a pool of
15  money available to a class of persons, the attorneys' fees for the plaintiffs' counsel are properly
16  calculated as a percentage of the entire fund.  *See Williams v. MGM-Pathe Communications*, 129
17  F.3d 1026, 1026-27 (9th Cir. 1997).  In *Boeing*, the Court concluded that the attorneys for a
18  successful class may recover a fee based on the entire common fund created for the class, even if
19  some class members make no claims against the fund so that money remains in it that otherwise
20  would be returned to the defendants.  *Boeing*, 444 U.S. at 480-81; *see also Six Mexican Workers*,
21  904 F.2d at 1311; *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2006);
22  *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999); *Glass*
23  *v. UBS Financial Services, Inc.*, 2007 WL 221862, *16 (N.D. Cal. Jan. 26, 2007); *Young v. Polo*
24  *Retail, LLC*, 2007 WL 951821, *8 (N.D. Cal. 2007).

25         Substantial fee awards in successful cases, such as the present action, encourage and
26  support meritorious class actions, and thereby promote private enforcement of, and compliance
27  with federal laws.  The continued viability of wage-and-hour laws, like the viability of other

28

                                        11
                    _____

remedial statutes, depends on the ability of private litigants to seek redress through litigation. The success of these lawsuits depends in part on the availability and willingness of attorneys to bring them.  Substantial fee awards also encourage reputable law firms with skilled, capable attorneys to take the risk of serving as "private attorneys general."  Indeed, "[a]bsent an award of fees that adequately compensates Class Counsel, the entire purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined and subverted to the interest of those lawyers who would prefer to take minor sums to serve their self-interest rather than obtaining real justice on behalf of their injured clients."  *Allapattah Services, Inc. v. Exxon Corp.*, 454 F.Supp. 2d 1185, 1217 (S.D.Fla. 2006).

### A.    AN UPWARD ADJUSTMENT OF THE NINTH CIRCUIT'S BENCHMARK IS APPROPRIATE

Although the Ninth Circuit established 25% as a "benchmark" for attorneys' fee awards that are established out of a common fund, where, as here, circumstances merit it, "[t]hat percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in [the] case."  *Paul,* 886 F.2d at 272.  Given the results achieved and the difficulties attendant in litigating this case, an upward adjustment is warranted.

In *Vizcaino*, the Ninth Circuit laid out the factors to be considered in adjusting a fee award from the "benchmark."  *See Vizcaino*, 290 F.3d at 1047-1050.  These are: (i) the size of the fund (and thus the resulting size of the percentage fee award); the quality of the results obtained by Plaintiff's counsel; (ii) the risk taken on by Plaintiff's counsel in accepting and pursuing the case with no guarantee of victory or being paid for their time and effort; (iii) incidental or non-monetary benefits conferred by the settlement; (iv) the effort expended by Plaintiff's counsel; (v) Plaintiff's counsel's reasonable expectations based on the circumstances of the case and fee awards in other cases; and, to a certain extent, the percentage fee award originally contracted for between Plaintiff and Plaintiff's counsel.  *Id*  A consideration of the *Vizcaino* factors shows that Plaintiff's Counsel's request for 35% the total value of the settlement is exceedingly reasonable.

12

1

### 1.    The Risks Assumed by Class Counsel Favor the Fee Award Sought

Class Counsel assumed a very real risk in taking on this case.  Plaintiff took on a national corporation defended by a national law firm with far more resources than Class Counsel.  Class Counsel took the case on a contingency basis, and invested time, effort, and money with no guarantee of any recovery.  In cases where the "recovery is far from certain," as here, an award of more than 25% of the common fund as attorneys' fees is appropriate.  *In re* Washington *Public Power*, 19 F.3d at 1302; *see also Vizcaino*, 290 F.3d at 1048.

Class Counsel proceeded knowing there was a chance that Defendant would prevail and that even if Plaintiff prevailed, there was a chance that the case would take years to bring to trial and would not be resolved without an appeal.  The risk of no recovery in complex class actions of this type is very real.  There are numerous cases where Plaintiff's counsel in contingent-fee cases such as this one, after devoting hundreds of hours and advancing significant sums in out-of-pocket expenditures, received no compensation whatsoever.  *See, e.g.*, *Armstrong v. Whirlpool Corp.*, 2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) (denying class certification of racial harassment claims); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The risk of maintaining class action status throughout the trial" was an important favor in approving the class action settlement.).  From the outset Defendant has adamantly denied any liability and continues to do so today.

This was a complicated and uncertain case in which Defendant vehemently contested liability.  This action has been pending since 2019.  There have been voluminous discovery and related disputes that have required substantial efforts by Plaintiff's counsel.  Plaintiff's counsel have made a significant effort on behalf of the Class, including taking and defending class member and expert depositions up and down the State of California, without assurance of any compensation.  The risks of the case and litigation obstacles were great, but Plaintiff's counsel, nevertheless, achieved an extremely successful result, and thus, this *Vizcaino* factor militates in favor of the fee award sought by Plaintiff's counsel.

/ / / /

13

1

2.      **Class Counsel Obtained an Excellent Result for the Class**

2

3          The result obtained by Class Counsel here is remarkable in light of the current status of

4    the case.  The parties were in the midst of class certification briefing when the settlement was

     obtained.

5

6          Class Counsel diligently and effectively investigated Plaintiff's claims, drafted the

7    Complaint, interviewed witnesses, prepared and responded to discovery, reviewed and analyzed

8    documents produced, prepared for and defended the deposition of the Class Representative, and

9    filed a Motion for Class Certification. Class Counsel concluded that the Settlement reflected in

10   this Agreement is in the best interests of the Class, after reviewing Plaintiff's deposition

11   transcript, completing interviews with potential Class Members, reviewing Defendant's policies,

12   conferring with Defendant's Counsel regarding Defendant's arguments in support of an

13   Opposition to the Motion for Class Certification, and evaluating the risk that further litigation

14   might result in Plaintiff not recovering anything at all was a very significant factor in

15   determining that this Agreement is fair, reasonable, and adequate.  As a result of the settlement,

     all of the Settlement Class Members will be provided with an automatic recovery.  Thus, this

16   *Vizcaino* factor greatly favors Plaintiff's Counsel's fee request.

17         The fairness of this fee request is further supported by the high quality of Plaintiff's

18   Counsel's legal representation as described above and in the declaration.  Plaintiff's Counsel's

19   highly-informed, diligent, and efficient prosecution of this matter positioned Plaintiff to

20   successfully settle this case, affording redress to the entire proposed settlement class, and

21   avoided the inevitable expense and risk attendant with protracted litigation.

22         The quality of opposing counsel is also important in evaluating the quality of Plaintiff's

23   Counsel's work.[2]  Here, as set forth above, Defendant is represented by experienced and skilled

24   lawyers from a law firm with a deserved reputation for vigorous advocacy in the defense of

25   complex employment class action cases.  The ability of Class Counsel to obtain this Settlement

26

27   [2]      *See In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068, at
     *35 (E.D.N.Y. Aug. 25, 2005) ("The quality of opposing counsel is also important in evaluating the quality of Class
28   Counsel's work.").

in the face of such formidable legal opposition confirms the quality of Class Counsel's representation.  Accordingly, this factor strongly supports the requested fee.

### 3.        Class Counsel's Award is Relatively Modest

Here, Class Counsel seeks 35% of the value of the settlement fund of $990,000.  Most Ninth Circuit cases consider the size of the settlement fund for purposes of evaluating fee requests, in relation to how large it renders the resulting fee award.  *See, e.g., In re Washington Public Power*, 19 F.3d at 1297 ("the percentage of an award generally decreases as the amount of the fund increases").  The fee request is less than the Net Settlement Amount that will be paid to the Class.  Accordingly, the fee request here is in line with Ninth Circuit precedent.

### 4.        Class Counsel Obtained Swift and Efficient Relief for the Class

While the *Vizcaino* court considered the protracted litigation in that case, it stressed: "We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief."  *Vizcaino*, 290 F.3d at 1050, n. 5.  In fact, the Court acknowledged that using time expended as a proxy for the effort expended on or success of a case "creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee," and that such an evaluation "does not reward early settlement."  *Id.*  Here, Class Counsel achieved a substantial benefit for class members in a very timely fashion, providing class members with substantial and certain relief much sooner than if this matter had been extensively litigated.  There is no doubt that either side would have appealed the trial verdict.

Moreover, Class Counsel did not sacrifice due diligence in achieving an efficient resolution of this case.  As discussed above, Class Counsel litigated this case heavily, took and defended depositions up and down the state, and reviewed hundreds of pages of relevant

15

documents produced by Defendant.[3]  In addition, Class Counsel spoke with numerous Class Members concerning their claims.  Hence, Class Counsel's request for fees is reasonable here.

### 5.  The Skill and Reputation of Class Counsel Justifies the Fee Requested

As shown in the accompanying declaration, Class Counsel are recognized leaders in employment class actions, and put the full use of their skill and experience to work in the service of Plaintiff and the Class in this case.[4]  As a result, these factors favor the fee award sought by Class Counsel. The Parris Law Firm has dedicated itself to this case.  Class Counsel are nationally-recognized trial and class-action attorneys and employed their knowledge, skill, and experience in bringing to conclusion a very favorable result in a unique, hard-fought litigation.[5] The goal achieved is the extraordinary result of obtaining $990,000.00 for the Class.  Class counsel respectfully requests an award of attorneys' fees equal to 35% of that amount.

### 6.  Reasonable Expectations of Counsel and Customary Fees in Similar Cases

Class Counsel knew this case would be an uphill battle, yet still took Defendant on a contingency basis.  And they were right.  Defendant fought this case strenuously and spared no expense on discovery and fighting Plaintiff's experts and Plaintiff's class member declarants.  Accordingly, there was a reasonable expectation based on the circumstances of the case and given the amount of work and hours Class Counsel devoted to this case that warrants an upward adjustment of the 25% benchmark to 35% of the Gross Settlement Amount.

This adjusted fee request is commensurate with federal court -- and, in particular, Ninth Circuit -- precedent: case surveys reflect that awards of this amount, or more, are common.  Newberg, Newberg on Class Actions, 4th Ed., 2002 §14.6; *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 297-298 (N.D.Cal. 1995) (citing cases awarding an award of 33%).  Indeed, many courts have approved common fund fee awards equivalent to or greater than the percentage requested here, and even when the award results in a substantial multiplier.  *See, e.g.,*

---

[3]  Szeto Decl. at ¶ 3.
[4]  *Id*. at ¶ 11.
[5]  *Id*.

16

1   *In re Pacific Enterprises*, 47 F.3d at 379 (affirming an award equal to 33% of the common fund);

2   *In re Ampicillin Antitrust Litigation*, 526 F. Supp. 494 (D.D.C. 1981) (45% of settlement fund);

3   *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F.Supp. 1195 (S.D.N.Y. 1979),

4   *aff'd* 622 F.2d 1106 (2nd Cir. 1980) (53% of settlement fund); *Van Gemert v. Boeing Co.*, 516 F.

5   Supp. 412, 420 (S.D.N.Y. 1981) (36% of settlement fund); *In re Buspirone Patent & Antitrust*

6   *Litig.*, MDL No. 1413, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) (multiplier was

7   more than eight times counsel's lodestar) ("BuSpar"); *North Shore Hematology-Oncology*

8   *Assoc., P.C. v. Bristol-Myers Squibb Co.*, No. 04 Civ. 248 (D.D.C. Nov. 30, 2004), (multiplier

9   was well over eight times counsel's lodestar); *In re Relafen Antitrust Litig.*, 1:01cv12239-WGY,

10  (Order and Final Judgment dated Apr 9, 2004, D. Mass.) (multiplier of 4.88 awarded); *In re*

11  *Cardizem CD Antitrust Litig.*, No. 99-73259 (E.D. Mich. Nov. 25, 2002) (approving multiplier of

12  approximately 3.7); *Nichols v. Smithkline Beecham Corp.*, No. Civ. A. 00-6222, 2005 WL

13  950616, at *24 (E.D. Pa. Apr. 22, 2005) (approving multiplier of 3.15); *In re Linerboard*

14  *Antitrust Litigation*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at * 49 (E.D. Pa. June 2,

15  2004) (approving 2.66 multiplier).  Accordingly, Class Counsel's 35% fee request is in line with

16  the customary fees awarded in similar cases given the amount of work Class Counsel devoted on

17  behalf of the Class.

18  **5.      THE PROPOSED SETTLEMENT CLASS SATISFIES THE ELEMENTS FOR CLASS**
        **CERTIFICATION.**

19
20          The Parties also may, at the preliminary approval stage, request that the court

21  provisionally approve certification of the class—conditional upon final approval of the

22  settlement. Settlements are highly favored, particularly in class actions. *Util. Reform Project v.*

23  *Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989); *Officers for Justice*, 688 F.2d at

24  625. Plaintiffs request such provisional approval:

25          The strength of the findings made by a judge at a preliminary hearing or
        conference concerning a tentative settlement proposal . . . . may be set

26      out in conditional orders granting tentative approval to the various items
        submitted to the court. Three basic rulings are often conditionally

27      entered at this preliminary hearing. These conditional rulings may

28
                                         17

approve a temporary settlement class, the proposed settlement, and the class counsel's application for fees and expenses.

4 Newberg on Class Actions at § 11.26.

### A.    **Numerosity**

The numerosity requirement is satisfied if the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). As of the date Defendant stopped rounding on June 9, 2019, there were 15,900 hourly-paid, non-exempt employees at Hyatt in California. Szeto Decl., ¶ 7. Accordingly, the Class is sufficiently numerous and clearly satisfies the numerosity prong.

### B.    **Ascertainability.**

Defendant has already ascertained the Class through Defendant's payroll records. *Id.*

### C.    **Typicality.**

Typicality under Rule 23(a)(3) is satisfied if the representative plaintiff's claims share a common element with the class: i.e., those claims arise from the same course of conduct that gave rise to the claims of other settlement class members. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988). Here, Plaintiff was employed as a non-exempt hourly employee at Defendant's hotel and was subjected to Hyatt's rounding policy, just like the rest of the class members. Crump Decl., ¶ 3. Plaintiff submit she suffered the same harm as the absent class members, including not being paid properly due to Hyatt's rounding policy. *Id.* Plaintiff asserts claims that are typical of the other class members because they arise from the same factual basis and are based on the same legal theory as those applicable to the other class members.

### D.    **Commonality.**

Commonality relates to whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied if there is one issue common to class

18

members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Here, the propriety of Defendant's rounding policy is a common question across the class.  These types of claims are the "sort routinely, and properly, found suitable for class treatment."  *Brinker*, at 1033.  "The theory of liability—that Defendant has a uniform policy and that that policy, measured against wage order requirements, allegedly violates the law—is by its nature a common question eminently suited for class treatment."  *Id.*; *see also In re Taco Bell Wage and Hour Actions*, No. 1:07cv1314 LJO DLB, 2012 WL 5932833, at *5 (E.D.Cal. 2012) ("Numerous courts within the Ninth Circuit have held that commonality exists where a defendant's policy allegedly violates the meal requirements of California law.").

### E.    <u>Adequacy.</u>

Adequacy under Rule 23(a)(4) is satisfied if the named plaintiffs have no disabling conflicts of interest with other members of the class and Class Counsel are competent and well qualified to undertake the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  Plaintiff submits that no conflict exists between Plaintiff and the Class because Plaintiff allegedly has suffered the same violations as all Class Members and has fairly represented all Class Members.  Despite the settlement, Plaintiff remains willing to vigorously prosecute this action to the benefit of the class.  Crump Decl. Furthermore, Plaintiff is represented by attorneys who have extensive experience in complex wage and hour litigation as is detailed in their declarations supported herewith.  Szeto Decl., Ex. 2.

### F.    <u>Common Question of Law and Fact Predominate</u>

Plaintiff contends that common questions of law or fact predominate over individual questions pursuant to Rule 23(b)(3).  These issues of fact and law raised in this action are common to all members of the classes and predominate in this case.  Here, Plaintiff contends Defendant's rounding practice is a common issue that predominates.  Dkt. 46.  There are no individualized inquiries that would somehow bar certification or recovery here.  Instead, this theory of liability is "sufficiently cohesive to warrant adjudication by representation." *Abdullah*, 731 F.3d at 964 (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013)).

19

Notably, "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b) (3)," especially in a wage-and-hour case. *Levya v. Medline Indus., Inc.* 716 F.3d 510, 514 (9th Cir. 2013); *see also Wal-Mart*, 131 S.Ct. at 2558 ("[I]ndividualized monetary claims belong in Rule 23(b)(3)"). "[D]amages determinations are individual in nearly all wage-and-hour class actions," and therefore any rule precluding certification " 'on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device.' " *Levya*, 716 F.3d at 513–14 (quoting *Brinker*, 53 Cal. 4th at 354). As set forth in Plaintiff's Motion for Class Certification, courts grant certification of rounding claims. Dkt. 46. Based on discovery, Plaintiff believes and asserts Defendant committed these violations to Plaintiff in the same manner as to all Class Members.

## G.   Superiority of Class Action

Plaintiff submits the requirement that a class action is superior to other methods of adjudication under Rule 23(b)(3) is also met. Courts have recognized that the class action device is superior to other available methods for the fair and efficient adjudication of controversies involving large number of employees in wage and hour disputes. *See*, e.g. *Hanlon*, 150 F.3d at 1022. Without class-wide relief in this action, the Class Members would be forced to litigate numerous cases on a piecemeal basis.

## 6.   THE PROPOSED NOTICE IS ADEQUATE

California statutory and case law vests the court with broad discretion in fashioning appropriate class notice. *See* CAL. CIV. CODE § 1781; *Cartt v. Superior Court* (1975) 50 Cal.App.3d 960, 973-74. The proposed Notice attached as **Exhibit "A"** to the Settlement Agreement provide information on the meaning and nature of the Settlement; the terms and provisions of the proposed Settlement, the relief the proposed Settlement will provide to the Class Members; Class Counsel's request for reimbursement of costs and attorneys' fees; the date, time, and place of the final settlement approval hearing; and the procedure and deadlines for participating and submitting objections to the proposed Settlement. The proposed Notice is consistent with class certification notices approved by numerous state and federal courts.

1       The proposed Notice also fulfills the requirement of neutrality in class notices.  *Newberg*,

2   at § 8.39.  "Sufficient information about the case should be provided to enable class members to

3   make an informed decision about their participation."  *Manual for Complex Litigation* § 21.311

4   at p. 413 (4th ed. 2007).  The proposed Notice summarizes the proceedings to date and the terms

5   and conditions of the proposed Settlement in an informative and coherent manner.  The proposed

6   Notice is "accurate, objective, and understandable to class members . . . ."  *Mendoza v. United*

7   *States* (9th Cir. 1980) 623 F.2d 1338.  The proposed Notice recognizes that the Court has not yet

8   granted final approval and apprises the Class Members of how to object to the proposed

9   Settlement.  The proposed Notice satisfies all due process requirements and comply with the

10   standards of fairness, completeness, and neutrality.  FED. R. CIV. P. 23(c)(2) and 23(e); *Newberg*,

11   at  §§ 8.21, 8.39; *Manual*, at §§ 21.311, 21.312; *See Cartt*, *supra*, 50 Cal.App.3d at p. 960.

12   Accordingly, the Court should approve the proposed Class Notice.

13   **7.**    **A**PPOINTING **P**HOENIX **C**LASS **A**CTION **A**DMINISTRATION **S**OLUTIONS AS THE

14       **S**ETTLEMENT **A**DMINISTRATOR

15       Class Counsel proposes the appointment of Phoenix Class Action Administration

16   Solutions. ("Phoenix"), an experienced, reputable third party administrator, as the Settlement

17   Administrator to administer the proposed Settlement.  Neither party or their counsel own or is

18   affiliated with Phoenix.  Phoenix will print and distribute the Notice to the Settlement Class by

19   First Class mail; establish a mailing address and toll-free telephone number to receive Class

20   Members' inquiries about the proposed Settlement; will receive, review, and process all

21   objections to the proposed Settlement; will receive and process any written disputes and

22   supporting documentation submitted by the Class Members as to their number of work weeks;

23   will handle inquiries from Class Members regarding the proposed Settlement; will calculate each

24   Class Members' individual share of the Net Settlement Amount; will mail the settlement checks

25   to the Settlement Class Members; and will perform any other usual and customary duties for

26   administering a class action settlement.  Phoenix's fees and expenses shall be paid out of the

21

Settlement Amount, not to exceed $85,000.  Accordingly, the Court should appoint Phoenix and direct Phoenix to administer the settlement as set forth in the Settlement Agreement.

**8.      THE CLASS REPRESENTATIVE INCENTIVE PAYMENT IS FAIR AND REASONABLE**

Plaintiff requests that the Court approve a Class Representative Incentive Payment in the total amount of $10,000 to Class Representative Christine Crump for her efforts in filing and assisting in this class action lawsuit.  It is within the Court's discretion to award to the Class Representative for her efforts and work.  *Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 participation award to a single class representative).  The criteria courts may consider in determining whether to make an incentive award include:  1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  *Id*.

Incentive payments to named plaintiffs are frequently awarded to recognize their time and efforts, and the risks they undertake on behalf of a class.  Courts routinely award service payments, which are intended to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class, as well as to compensate class representatives for their time, effort and inconvenience.  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), *quoting In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.").  In the *Ingram* case, the Court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class.  *Id* at 694; *see also Van Vranken*, 901 F. Supp. at 300 (N.D. Cal. 1995) (approving $50,000 participation award for the representative Plaintiff).

22

1      Incentive awards are particularly appropriate where the "class representative[ ] remain[s]

2   fully involved and expended considerable time and energy during the course of the litigation."

3    *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 WL 3312024, at *4 (D. Or.

4   Nov. 13, 2006).  Plaintiff spearheaded this lawsuit.[6]  She committed time to the litigation by

5   reviewing pleadings, communicating with Class Counsel during the prosecution of this case, and

6   sitting for deposition, warranting an incentive award.[7]  *See Garner v. State Farm Mut. Auto. Ins.*

7   *Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, *17 (Apr. 22, 2010) (approving a $20,000

8   award where plaintiff "made herself available for deposition on two separate occasions; met with

9   Class Counsel on six separate occasions; attended the full-day Court-ordered appraisal hearing;

10  spoke with Class Counsel and their staff on many occasions; reviewed all major pleadings; and

11  repeatedly responded to interrogatories and document requests.")

12      The Class Representative Incentive Payment is further justified because Plaintiff has

13  agreed to the full general release of her claims against Defendant, which is much broader than

14  the release that applies to the class.[8]  Broad releases of the named plaintiff's claims that go

15  beyond what is required of the class members are taken into account when considering the

16  reasonableness of the incentive award.  *See Boring v. Bed Bath & Beyond of California Ltd.*

17  *Liab. Co.*, No. 12-CV-05259-JST, 2014 WL 2967474, at *3 (N.D. Cal. June 30, 2014); *Holman*

18  *v. Experian Info. Solutions, Inc.*, No. 11-CV-0180 CW (DMR), 2014 WL 7186207, at *6 (N.D.

19  Cal. Dec. 12, 2014) (finding that the class representative is entitled to an incentive award "for his

20  service to the class and for his broad release of all claims, known or unknown, against [the

21  defendant]"); *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *7

22  (C.D. Cal. June 13, 2013) (approving the incentive award in part because the plaintiff executed

23  "a general release that will resolve her individual claims, as well the class claims").

24      Notably, the award is also well within the acceptable range awarded in similar cases.

25  *See, e .g., Van Vranken v. Atlantic Richfield*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (holding

26

27  [6]      Declaration of Christine Crump at ¶ 4.

28  [7]      *Id.* at ¶¶ 4-15.
    [8]      *Id.* at ¶ 16.

that incentive awards of $50,000 to each named plaintiff was fair and reasonable); *Singer v. Becton Dickinson and Co.*, 08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (finding class representative award of $25,000 reasonable); *Smith v. CRST Van Expedited, Inc.,* No. 10-CV-1116- IEG WMC, 2013 WL 163293, at *6 (S.D. Cal. Jan. 14, 2013) (holding that incentive awards of $15,000 for each of the three named representatives was "well within the range awarded in similar cases"); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913–14 (S.D.Ohio 2001) (approving an award of $50,000 where the class representative "has been instrumental in bringing [the] lawsuit forward" and "has performed numerous tasks in association with [the] litigation").  Without the effort of Plaintiff, this case would not have been filed and a classwide settlement would not have been achieved.  The proposed $10,000 Class Representative Incentive Payment to Plaintiff is therefore appropriate and justified as part of the overall settlement.

**9.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the proposed **$990,000.00** Settlement; preliminarily approve Class Counsel's request for attorneys' fees in the amount of **$346,500**; preliminarily approve Class Counsel's request for reimbursement of litigation costs and expenses in the amount of **$100,000**; preliminarily approve a **$10,000** Class Representative Incentive Payment to Plaintiff; appoint Phoenix as the Settlement Administrator; approve the Class Notice and Request for Exclusion; and set the final approval hearing on **September 8, 2022**.

DATED:  February 8, 2022                    **PARRIS LAW FIRM**

By: /s/ Kitty K. Szeto
                                Kitty K. Szeto
                                Attorneys for Plaintiff and the
                                Putative Class

24