UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTINE CRUMP,

Plaintiff,

v.

HYATT CORPORATION,

Defendant.

Case No. 20-cv-00295-HSG

**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL**

Re: Dkt. No. 59

Pending before the Court is Plaintiff's unopposed motion for preliminary approval of class action settlement. *See* Dkt. No. 59. The Court held a hearing on the motion. For the reasons detailed below, the Court **GRANTS** the motion.

## I.   BACKGROUND

### A.   Factual Allegations

Plaintiff Christine Crump was employed as a Line Cook at Hyatt House in Emeryville, California from approximately January to June 2019. *See* Dkt. No. 59-2 at ¶¶ 2–3; Dkt. No. 59-1, Ex. C ("SAC") at ¶¶ 24–25.[1] Plaintiff contends that Defendant had a timekeeping policy that rounded hourly employees' time to the nearest hour, as opposed to paying them for every minute they were working. *See* SAC at ¶ 31. She further alleges that as a result, Defendant failed to pay overtime and minimum wage; timely pay all wages upon termination; and keep accurate payroll records. *See id.* at ¶¶ 32–46.

//

//

---

[1] As part of the settlement agreement, detailed below, the parties agreed to file a second amended complaint to conform with the scope of the release. *See* Dkt. No. 59-1, Ex. 1 ("SA") at § 2.6.

United States District Court
Northern District of California

**B.     Settlement Agreement**

In July 2021, the parties participated in a full-day mediation with mediator Paul Grossman. Dkt. No. 59 at 4.  The parties ultimately entered into a settlement agreement, fully executed in February 2022.  The key terms are as follows:

Class Definition:  The Settlement Class is defined as "all current and former non-exempt, hourly employees working for Defendant in California at any time between December 6, 2015 through June 9, 2019."  SA § 1.3.

Settlement Benefits:  Defendant will make a $990,000 non-reversionary payment.  SA §§ 1.16, 5.1, 5.6.  Defendant shall make this payment in two tranches:  the first 50% shall be paid ten days after judgment has been entered, and the remaining 50% will be paid six months later.  *Id.* at §§ 1.13, 5.1.

The parties propose that $50,000 of this gross settlement fund be allocated to the PAGA claim as civil penalties.  *See* SA §§ 1.19, 5.5.  Of this PAGA Payment, $37,500 will be paid to the California Labor and Workforce Development Agency ("LWDA") and $12,500 will be distributed pro rata to class members.  *Id.* at § 5.5; *see also* Cal. Lab. Code § 2699(i) (providing that penalties under PAGA are split 75% to LWDA and 25% to aggrieved employees).  The gross settlement fund also includes Court-approved attorneys' fees and costs, settlement administration fees, the employees' share of payroll taxes, any incentive payment to Plaintiff as class representative, and payments to class members.  SA § 1.16.  The cash payments to the class will be based on the number of weeks each class member worked during the relevant class period.  *Id.* at §§ 5.6, 5.6.1.

Release:  All Settlement Class Members will release Defendant and its subsidiaries, including Select Hotels Group LLC:

> of and from any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind between December 6, 2015 and the date of Preliminary Approval of the Settlement, for any and all claims asserted or that could have been asserted based on the facts and theory that Defendant or any of the Released Parties maintained a timekeeping system that unlawfully rounded time as alleged in the Second Amended Complaint in the Action, including those for: (1) all claims for alleged failure to pay minimum, straight time, overtime, or double time wages, wages or damages under the FLSA, California law, or common law, based on

2

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13

a theory that Defendant or any of the Released Parties maintained a timekeeping system that unlawfully rounded time; (2) failure to pay final wages due at separation or upon termination; (3) failure to timely pay wages during employment; (4) failure to provide accurate and itemized wage statements; (5) failure to keep requisite payroll records; (6) claims brought under Business & Professions Code section 17200 *et seq.* including, but not limited to, all claims for unfair, unlawful and harmful conduct to class members, the general public and Defendant's competitors and claims of unlawfully gaining an unfair advantage over other businesses based on the facts and allegations contained in the Second Amended Complaint; (7) PAGA claims for civil penalties due to any Labor Code violations by Defendant arising out of or related to events alleged in the Second Amended Complaint including, but not limited to, Labor Code sections 201, 202, 203, 204, 226, 226.3, 510, 1174, 1194, 1197, 1197.1, and 1198; and California Industrial Welfare Commission Wage Orders; (8) penalties of any nature; (9) interest; (10) liquidated damages; (11) attorneys' fees; (12) costs; and (13) any other claims arising out of or related to the Second Amended Complaint filed in the Action through final approval of the Settlement. This Settlement, Settlement Agreement, and the definition of Released Claims expressly exclude all claims pled in *Hartstein v. Hyatt Corporation*, Case No. 2:20-cv-04874-DSF-JPR and *Insixiengmay v. Hyatt Corporation, et al.*, Case No. 2:18-cv-02993-TLN-DB.

14   *See* SA at §§ 1.26, 1.27, 6.1.

15       The first checks distributed to class members will also include the following language:

16

17
18
19
20
21
22

My signature or cashing of this check constitutes a full and complete release of Hyatt Corporation, and all of their current or former subsidiary or affiliated entities, and their current or former officers, directors, and employees, for any and all claims asserted or that could have been asserted based on the facts alleged in the operative Second Amended Complaint in the lawsuit entitled *Crump v. Hyatt Corporation, et al.* pending in the United States District Court, Northern District of California, designated as Case No. 4:20-cv-00295-HSG, arising during my employment at any time between December 6, 2015 and the date of the Preliminary Approval Order of the Settlement of the lawsuit.

23   *Id.* at § 5.7.1.

24       <u>Incentive Award</u>:  The named Plaintiff may apply for an incentive award of no more than

25   $10,000.  SA § 5.3.

26       <u>Attorneys' Fees and Costs</u>:  Class Counsel will file an application for attorneys' fees not to

27   exceed 35% of the Gross Settlement Amount, or $346,500, and costs not to exceed $100,000.  SA

28   § 5.2.

United States District Court
Northern District of California

1    Opt-Out Procedure: The deadline for a class member to submit a request for exclusion or

2    to object to the Settlement is 30 days after the initial mailing date of the notice. SA §§ 4.2.1.

3    Defendant retains the right to withdraw from the settlement agreement if 5% or more of the class

4    members opt out. *See id.* at § 4.2.3.

5    ## II.    PROVISIONAL CLASS CERTIFICATION

6    The plaintiff bears the burden of showing by a preponderance of the evidence that class

7    certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v.*

8    *Dukes*, 564 U.S. 338, 350–51 (2011). Class certification is a two-step process. *First*, a plaintiff

9    must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality,

10   typicality, and adequacy of representation. *Id.* at 349. *Second*, it must establish that at least one of

11   the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a

12   class under Rule 23(b)(3), it must show that "questions of law or fact common to class members

13   predominate over any questions affecting only individual members, and that a class action is

14   superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

15   R. Civ. P. 23(b)(3).

16   "The criteria for class certification are applied differently in litigation classes and

17   settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019)

18   ("*Hyundai II*"). When deciding whether to certify a litigation class, a district court must consider

19   manageability at trial. *Id.* However, this concern is not present in certifying a settlement class.

20   *Id.* at 556–57. In deciding whether to certify a settlement class, a district court "must give

21   heightened attention to the definition of the class or subclasses." *Id.* at 557.

22   ### A.    Rule 23(a) Certification

23   The Court finds that all the requirements of Rule 23(a) are met:

24   - **Numerosity.** Joinder of the thousands of estimated class members would be

25   impracticable. *See* Dkt. No. 59 at 18 (estimating 15,900 hourly-paid, non-exempt

26   employees at Hyatt in California).

27   - **Commonality**. Common questions of law and fact include the propriety of

28   Defendant's rounding policy. *See* Dkt. No. 59 at 18–19.

4

- **Typicality.**  Plaintiff's claims are both factually and legally similar to those of the putative class because Defendant allegedly applied its rounding policy to Plaintiff and all class members.  *See* Dkt. No. 59 at 18.

- **Adequacy of Representation.**  The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either Plaintiff or counsel have a conflict with other class members.  Plaintiff's counsel has been appointed class counsel in numerous federal and state class actions.  Dkt. No. 59-1, Ex. 2.  The Court finds that proposed class counsel and Plaintiff have prosecuted this action vigorously on behalf of the class to date, and will continue to do so.

**B.    Rule 23(b)(3) Certification**

The Court also finds that the predominance and superiority requirements of Rule 23(b)(3) are met:

- **Predominance.**  The Court concludes that for purposes of settlement, common questions predominate here because under Plaintiff's allegations Defendant's wage and hour policies were uniform and violated California law.  Although the class members will need to rely upon individual evidence to some extent to calculate their individual damages, the "mere fact that there might be differences in damage calculations is not sufficient to defeat class certification."  *Hyundai II*, 926 F.3d at 560 (quotations omitted).

- **Superiority.**  A class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them.  Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

**C.    Class Representative and Class Counsel**

Because the Court finds that Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiff as class representative.  When a court certifies a class, it must also appoint class counsel.  Fed. R. Civ. P. 23(c)(1)(B).  Counsel have investigated and litigated this case throughout its existence and have submitted declarations

United States District Court
Northern District of California

detailing their expertise in representing plaintiffs in class action suits, especially wage and hour class actions.  *See* Dkt. No. 59-1, Ex. 2.  Accordingly, the Court appoints Parris Law Firm as Class Counsel.  *See* Fed. R. Civ. P. 23(g)(1)(A) (listing factors courts must consider when appointing class counsel).

### III.   PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court considers whether it should preliminarily approve the parties' class action settlement.

#### A.   Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable."  *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted). Such settlement agreements "'must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'"  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent."  *Id.* (quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement:  (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class;

United States District Court
Northern District of California

(3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

### B.   Analysis

#### i.   Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See Roes*, 944 F.3d at 1049. The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id.*

Here, the proposed settlement is non-reversionary. Checks that remain undeliverable or uncashed after 180 days will be sent to the California State Controller's Office to be held as "Unclaimed Property" in the name of the class member. *See* SA § 5.9.2. Each class member who has not cashed either their first or second check will receive a postcard informing them of the website where they can request their uncashed funds to be mailed to them. *See* Dkt. No. 63 at ¶ 5. As the parties explained during the preliminary approval hearing, this structure is designed to optimize class members' opportunity to obtain their share of the settlement fund, rather than sending uncashed checks to a *cy pres* recipient.

However, the Settlement Agreement contains a clear sailing arrangement, which states that Defendant will not oppose Plaintiff's motion for attorneys' fees and costs so long as the amount requested does not exceed 35% of the Gross Settlement amount, or $346,500. SA at § 5.2. The Ninth Circuit has noted that clear sailing arrangements are "important warning signs of collusion," because "'[t]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class.'" *Roes*, 944 F.3d at 1051 (quoting *In re Bluetooth*, 654 F.3d at 948). Accordingly, when confronted with a clear sailing provision, the district court has a heightened duty to "scrutinize closely the relationship between

7

1    attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees

2    simply because they are uncontested." *Id.* (quotations omitted).

3         When deciding to award attorney's fees and costs, the Court has discretion in a common

4    fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund. *Vizcaino v.*

5    *Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under the percentage-of-recovery method,

6    twenty-five percent of a common fund is the benchmark for attorneys' fees award. *See, e.g.*, *In re*

7    *Bluetooth Headset*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the

8    'benchmark' for a reasonable fee award, providing adequate explanation in the record of any

9    'special circumstances' justifying a departure."). Even if the Court were to award 35% in

10   attorneys' fees, however, the majority of the monetary settlement will still be distributed to class

11   members. *See* Dkt. No. 59 at 2 (calculating that after deducting fees, costs, and incentive

12   payments, $411,000 will be available to pay settlement class members). But in any event, the

13   Court is cognizant of its obligations to review class fee awards with particular rigor, and at the

14   final approval stage will carefully scrutinize the circumstances and determine what attorneys' fee

15   awards is appropriate in this case. At this stage, the Court does not find that the clear sailing

16   provision weighs against preliminary approval.[2]

17            **ii.    Preferential Treatment**

18        The Court next considers whether the settlement agreement provides preferential treatment

19   to any class member. The Ninth Circuit has instructed that district courts must be "particularly

20   vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to

21   infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have

22   consistently stated that preliminary approval of a class action settlement is inappropriate where the

23   proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*,

24   2018 WL 6099948, at *8 (quotations omitted).

25        Although the settlement agreement authorizes Plaintiff to seek an incentive award of no

26

27   _____

     [2] Plaintiff's counsel argues at length that it is entitled to attorneys' fees in the amount of 35% of
     the settlement fund, *see* Dkt. No. 59 at 12–17, but the Court need not—and does not—decide that
28   issue now. Preliminary approval of the settlement does not constitute an endorsement or pre-
     approval of any future fees request, which will be considered at the final fairness hearing.

more than $10,000 for her role in this lawsuit, *see* SA § 5.3, the Court will ultimately determine whether she is entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiff must provide sufficient evidence to allow the Court to evaluate her award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

### iii. Settlement within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiffs' case.

Here, the total settlement amount constitutes approximately 76% of what Class Counsel estimates to be the realistic recovery at trial. *See* Dkt. No. 59 at 9; *see also* Dkt. No. 59-1 at ¶ 8. Plaintiff acknowledges that she would face substantial risk in continuing to litigate this case, such as certifying the class and prevailing at trial and through the appeals process. *See* Dkt. No. 59 at 5–7, 9. The Court finds that the settlement amount, given these risks, weighs in favor of granting preliminary approval.

### iv. Obvious Deficiencies

The Court also considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in

favor of preliminary approval.

*     *     *

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.  The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## IV.   PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  District courts have "broad power and discretion vested in them by [Rule 23]" in determining the contours of appropriate class notice.  *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

> (i)      the nature of the action;
> (ii)     the definition of the class certified;
> (iii)    the class claims, issues, or defenses;
> (iv)     that a class member may enter an appearance through an attorney if the member so desires;
> (v)      that the court will exclude from the class any member who requests exclusion;
> (vi)     the time and manner for requesting exclusion; and
> (vii)    the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed that a third-party settlement administrator will send class notice via first-class U.S. mail to each class member at their last known address, as provided by Defendant and updated by the administrator as appropriate.  SA § 3.4.  Any letters returned as undeliverable will be sent to any updated address provided with the returned mail.  *Id.* at § 3.4.1.  If no forwarding address is provided, the settlement administrator will attempt to determine the correct address using the National Change of Address Database.  *Id.*  The Court finds that the

United States District Court
Northern District of California

proposed notice process is "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045 (quotation omitted).

As to the substance of the notice, the parties have attached a copy of their proposed class notice to the Settlement Agreement. *See* Dkt. No. 63, Ex. 1. The notice packets will include individualized estimates of the number of weeks worked for each class member. *See id.* The notice also explains how to opt out of or object to the Settlement Agreement. *Id.*

The notice also informs class members that Class Counsel will file a motion with the Court for attorneys' fees, as well as reimbursement of litigation costs and expenses advanced by Class Counsel. *Id.* It also provides that Plaintiff may request up to $10,000 for her services as Class Representative. *Id.*

To enable class members to review the motion for attorneys' fees and the motion for incentive award, Class Counsel shall include language in the settlement notice: (1) indicating the deadline for filing the attorneys' fees motion and request for Plaintiff's incentive award; (2) specifically stating the deadline for any class member objections to these motions; and (3) informing class members how to access the motion and supporting materials. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion).

The Court therefore finds that with these changes, the content of the proposed notice provides sufficient information about the case and thus conforms with due process requirements. *See Hyundai II*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (quotation omitted)).

## V.   CONCLUSION

The Court **GRANTS** the motion for preliminary approval. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 45 days after the filing of the motion for attorneys' fees and incentive payments | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan with the edits identified above.

      **IT IS SO ORDERED.**

Dated:  6/17/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge