R. Rex Parris (SBN 96567)
    rrparris@parrislawyers.com
Alexander R. Wheeler (SBN 239541)
    awheeler@parrislawyers.com
Kitty K. Szeto (SBN 258136)
    kszeto@parrislawyers.com
Ryan A. Crist (SBN 316653)
    rcrist@parrislawyers.com
**PARRIS LAW FIRM**
43364 10th Street West
Lancaster, California 93534
Telephone:    (661) 949-2595
Facsimile:    (661) 949-7524

Attorneys for Plaintiff and the Putative Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE CRUMP, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act;<br><br>Plaintiff,<br><br>v.<br><br>HYATT CORPORATION, an unknown business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 4:20-cv-00295-HSG<br><br>**CLASS ACTION**<br><br>**PLAINTIFF CHRISTINE CRUMP'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  November 3, 2022<br>Time:  2:00 p.m.<br>Courtroom:  2 |

**TABLE OF CONTENTS**

**PAGE**

NOTICE OF UNOPPOSED MOTION .................................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................... 1

1. PROCEDURAL HISTORY AND FACTUAL BACKGROUND ......................................................... 2
2. SUMMARY OF THE SETTLEMENT TERMS ............................................................................... 3
3. THE SETTLEMENT ADMINISTRATION PROCESS ..................................................................... 4
4. FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED ........................................... 4
   A. The Strength of the Case and Associated Risks Favor Final Approval of the Settlement. ................................................................................................................ 5
   B. The Settlement Resulted from Arm's Length Negotiations Based Upon Extensive Investigation and Discovery. ............................................................................... 8
   C. The Settlement Amount is Fair, Reasonable, and Adequate. ................................. 8
5. CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**PAGE(S)**

*Acosta v. Trans Union*
    243 F.R.D. 377 (C.D. Cal. 2007) ................................................................................ 4

*In re American Bank Note Holographies, Inc., Securities Litigation*
    127 F.Supp.2d 418 (S.D.N.Y. 2001) .......................................................................... 10

*In re Toys R Us-Delaware, Inc. -- Fair & Accurate Credit Transactions Act (FACTA) Litig.*
    295 F.R.D. 438 (C.D. Cal. 2014) ................................................................................ 9

*Linney v. Cellular Alaska P'ship*
    151 F.3d 1234 (9th Cir. 1998) ..................................................................................... 5

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*
    688 F.2d 615 (9th Cir. 1982) ....................................................................................... 9

*Rodriguez v. West Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009) .................................................................................. 5, 9

**NOTICE OF UNOPPOSED MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 3, 2022, at 2:00 p.m., or as soon thereafter as this matter may be heard before the Honorable Haywood S. Gilliam, Jr. in Courtroom 2 of the above-entitled court located at 1301 Clay Street, Oakland, California 94612, Plaintiff Christine Crump ("Plaintiff") will seek an order:

- Granting final approval of the proposed all-in, non-reversionary **$990,000.00** class action settlement as described herein and as set forth in the parties' Joint Stipulation of Class Action Settlement and Release of Claims ("Settlement Agreement") attached as **Exhibit "1"** to the Declaration of Kitty K. Szeto filed concurrently herewith ("Szeto Decl."); and

- Entering the [Proposed] Judgment filed concurrently herewith. Dkt. 71-4.

This motion is based on the following memorandum of points and authorities; the Declarations of Kitty K. Szeto and Taylor Mitzner in support thereof; the [Proposed] Order lodged together with this motion; the [Proposed] Judgment; as well as upon the pleadings and other records on file with the Court in this matter; and upon such documentary evidence and oral argument as may be presented at or before the hearing on this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether to grant final approval of the Joint Stipulation of Class Action Settlement and Release of Claims.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff Christine Crump ("Plaintiff") seeks final approval of an all-in, non-reversionary class action settlement fund. Subject to court approval, Defendant Hyatt Corporation ("Defendant") has agreed to pay a total maximum settlement fund of **$990,000.00** ("Gross Settlement Amount") in exchange for a release of claims limited to the facts and theory that Defendant maintained a timekeeping system that unlawfully rounded the class members time worked from December 6, 2015 through June 9, 2019 when Defendant stopped its rounding practice. After deducting payment of attorneys' fees ($346,500) and costs ($97,158.56) to Class

1  Counsel, the costs of settlement administration ($85,000), and Class Representative Incentive
2  Payment ($10,000), a Net Settlement Amount of approximately $413,841.44 will be
3  automatically paid out to Settlement Class Members without the need to submit a claim form.
4  This hotly-contested class action has been actively litigated for over a year and involved ongoing
5  investigations, the exchange of written discovery and the analysis of documents, taking and
6  defending depositions, a partially briefed motion for class certification, expert depositions,
7  attending an arms-length mediation, and post-mediation settlement negotiations.  Accordingly,
8  the **$990,000.00** Settlement is fair, reasonable, and adequate and the Court should grant final
9  approval.

10  **1.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

11  On December 6, 2019, Plaintiff filed her original Complaint against Defendant on behalf
12  of the Class. The Complaint was removed to federal court based on jurisdiction under the Class
13  Action Fairness Act. On August 5, 2020, Plaintiff filed a First Amended Complaint on behalf of
14  the Class. Plaintiff asserted nine causes of action in her First Amended Complaint against
15  Defendant: (1) "Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period
16  Premiums)"; (2) "Violation of California Labor Code §§ 226.7 (Unpaid Rest Period Premiums)";
17  (3) "Violation of California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wages)";
18  (4) "Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid)"; (5)
19  "Violation of California Labor Code § 204 (Wages Not Timely Paid During Employment)"; (6)
20  "Violation of California Labor Code §226(a) (Non-Complaint Wage Statements)"; (7) "Violation
21  of California Labor Code § 1174(d) (Failure To Keep Requisite Payroll Records)"; (8)
22  "Violation of California Business & Professions Code §§ 17200, et seq."; and (9) "Violation of
23  California Labor Code § 2698, et seq.(California Labor Code Private Attorney General Act of
24  2004)." Like the original Complaint, the First Amended Complaint sought unpaid wages, actual
25  damages, statutory damages, monetary damages, interest, statutory penalties, civil penalties,
26  liquidated damages, restitution, declaratory and injunctive relief, equitable relief, pre-judgment
27  interest, and attorneys' fees and costs.
28  / / / /

During the litigation of this Action, the Parties have engaged in extensive written discovery. Defendant served a Notice of Oral Deposition and completed Plaintiff's deposition. Defendant also served a Demand for Production of Documents, and received documents from Plaintiff. Plaintiff also propounded multiple sets of Interrogatories and Demands for Production against Defendant, and received responses from Defendant. Plaintiff served a notice of deposition of Defendant under Rule 30(b)(6), and completed that deposition. The parties also took the depositions of various expert witnesses and class declarants.

Class Counsel investigated the claims against Defendant in the Action and also analyzed all applicable defenses raised by Defendant. The investigation included review of documents produced during discovery, deposition of Plaintiff, deposition of Defendant's corporate witness, depositions of putative class member declarants, depositions of Plaintiff's retained experts, several conferences between Class Counsel and Defendant's Counsel, conferences between the Parties and the Court, and Class Counsel's further interviews of the Class Representative and other Class Members. Class Counsel believed it had obtained enough information to file a Motion for Class Certification and subsequently filed a Motion for Class Certification on May 6, 2021. Similarly, Defendant's Counsel similarly believes it had obtained enough information to file an Opposition to Plaintiff's Motion for Class Certification, which it filed on July 15, 2021.

On July 20, 2021, the parties participated in a full day of mediation with Paul Grossman, Esq., a well-respected class and representative action mediator. While the case did not settle at the mediation, the parties continued settlement negotiations with the assistance of the mediator and ultimately reached the Settlement.

## 2. SUMMARY OF THE SETTLEMENT TERMS

Under the terms of the Settlement, Defendant shall pay a Gross Settlement Amount of **$990,000.00**. All funds remaining after deduction of the Class Representative Incentive Payment ($10,000), Attorneys' Fees ($346,500), Costs ($97,158.56), the LWDA Payment ($37,500), and Settlement Administration Costs ($85,000) will result in a net settlement amount of $413,841.44 ("Net Settlement Amount") that will be automatically paid out to all Settlement Class Members on a pro-rata basis based on the number of Weeks Worked.

3. **THE SETTLEMENT ADMINISTRATION PROCESS**

The Court-appointed Settlement Administrator, Phoenix Class Action Administration Solutions ("Phoenix"), took all necessary steps to effectuate the settlement administration process as set forth in the Settlement Agreement. On July 26, 2022, Phoenix received a data file from Defendant's Counsel that contained names, last known mailing addresses, Social Security numbers, and number of Weeks Worked for each Class Member ("Class List") from December 6, 2015 to June 9, 2019 ("Class Period"). Dkt. 71-2 at ¶ 3. Phoenix used the National Change of Address database through the United States Postal Service to obtain updated addresses for all Class Members. *Id*. ¶ 4.

On August 5, 2022, Phoenix mailed the Notice and Request for Exclusion via U.S. first class mail, in English, to all fifteen thousand eight hundred and seventy (15,870) Class Members on the Class List. *Id*. ¶ 5. Phoenix took all efforts to skip trace and re-mail all returned Notice Packets. *Id*. ¶¶ 6-7. Class Members had until September 19, 2022 to timely respond to the Settlement. *Id*. ¶ 8. Phoenix received ninety-six (96) timely Requests for Exclusion from the Settlement. *Id.* ¶ 8. Phoenix did not receive any objections to the Settlement and/or the application for attorneys' fees and costs and incentive payment. Dkt. 71-2 at ¶ 9.

4. **FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED**

Fed. R. Civ. P. 23(e) requires that a court engage in a two-step process when considering whether to approve the settlement of a class action. First, it must make a preliminary determination whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). At this stage, "the settlement need only be potentially fair." *Id*. In the second step of the process -- which occurs after preliminary approval, notification to class members and the compilation of information as to any objections by class members -- a court determines whether final approval of the settlement should be granted.

A court is to consider and evaluate several factors as part of its assessment of the appropriateness of a proposed settlement. The Ninth Circuit has identified the following non-exclusive ones that may be considered during both the preliminary and final approval processes:

1) the strength of the plaintiff's case;

2) the risk, expense, complexity and likely duration of further litigation;

3) the risk of maintaining class action status throughout the trial;

4) the amount offered in settlement;

5) the extent of discovery completed and the stage of the proceedings;

6) the experience and view of counsel;

7) the presence of a governmental participant; and

8) the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Each of these factors does not necessarily apply to every class action settlement. Further, other factors may apply in evaluating a proposed settlement in a particular case. For example, courts often consider whether the settlement is the product of arm's length negotiations. See *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution").

### A. The Strength of the Case and Associated Risks Favor Final Approval of the Settlement.

Hyatt maintained a state-wide policy of rounding the employees' hours against them. Dkt. 46-6, Ex. I (Cornwell Depo. at 192:15–193:21). Instead of paying the employees for their actual time on the clock, Hyatt would automatically manipulate the employees' punch times to round the class members' time "to the nearest quarter hour." *Id*. at 178:2–4. Specifically, Hyatt "rounded the hourly employee's time and didn't pay actual punch time." *Id*. at 188:14–19. Instead, it used the rounded time to calculate hours and to generate pay. *Id*. at 216:8–19. This policy applied to every hotel in California. *Id*. at 192:15–193:21. The "clocking in and out policy" is also "the same at all locations." *Id*. at 129:7–10. Moreover, each and every hotel also uses the exact same Kronos timekeeping system in which the rounding function was used. *Id*. at 171:13–172:22.

/ / / /

/ / / /

When asked to review Plaintiff's time records, Hyatt's Rule 30(b)(6) witness confirmed this policy unfairly rounded Plaintiff's 2:30 start time against her and shorted her eight minutes of wages:

> Q: She punched in at 2:24 to start working, right?
>
> A: Yes.
>
> Q: And actually punched in two minutes past her scheduled end time, correct?
>
> A: Yes.
>
> Q: So an extra eight minutes of work, correct?
>
> A: Yes.
>
> Q: But she was only paid for eight hours as opposed to eight hours and eight minutes, correct?
>
> A: Yes.

Dkt. 46-6, Ex. I (Cornwell Depo. at 187:17–188:13) (reviewing Dkt. 46-6, Ex. E).

Hyatt's rounding policy is not neutral for several reasons. For example, prior to June 1 2019, hourly employees were not allowed to clock-in more than seven minutes before the start of their scheduled shifts. Dkt. 46-6, Ex. I (Cornwell Depo. at 173:19–174:14). In fact, employees were physically unable to clock-in because the timekeeping system would automatically deny employees' attempts to clock-in if they attempted to clock in seven or more minutes before the start of their scheduled shifts. *Id*. at 175:20–176:6 ("The system itself would not allow for anybody to log in.") When asked if employees could clock-in outside their rigid schedule, he said, "[n]ot without going to their supervisor to – to override that. So the supervisor could change the schedule in the system, and then they could clock in." *Id*. If an employee tried to clock-in early, Hyatt's time clock system automatically sent a prompt stating, "You cannot clock in more than 7 minutes before your scheduled start time." Dkt. 46-6, Ex. D. This policy has existed since before the class period. Dkt. 46-6, Ex. I (Cornwell Depo. at 174:10–14).

In June 2019, Hyatt changed its policy in an attempt to avoid unfairly rounding the class members' hours. "Beginning on Sunday, June 2, Hyatt will change to minute-to-minute pay in our Kronos time clock system. This means the clock will no longer be rounded to the quarter

hour. Instead, we will be paid for the actual minutes that we are clocked-in." Dkt. 46-6, Ex. F; *see also* Dkt. 46-6, Ex. I (Cornwell Depo. at 188:20– 189:10). Hyatt provided notice to all California hotels that it was changing its policy so that "whenever you clocked in and clocked out [] Hyatt will pay you for [it]." *Id*. at 194:18–195:14.

On May 6, 2021, Plaintiff moved to certify a Rounding Class of all current and former hourly-paid or non-exempt employees who worked for Defendant within the State of California at any time during the period from December 6, 2015 to June 1, 2019. Nevertheless, Class Counsel recognized the risk of potentially not obtaining class certification with the case proceeding on an individual basis. And, a settlement of this considerable monetary amount is preferable to the multi-tiered risks associated with proceeding with trial and a likely appeal, and is in the class members' best interests. If Plaintiff were to have rejected this close to million dollar common fund settlement, the case would have to be certified, survive decertification, and proceed through trial. As with all trials, there is considerable risk for both sides, and that risk is amplified for both sides when the case involves 15,774 Settlement Class Members.

Were Plaintiff to succeed in prevailing at a class-action jury trial, the resulting money judgment would likely be subject to many rounds of appeals, where, again, both sides would face considerable risk – for Plaintiff his hard-fought jury verdict could be overturned, as could a favorable ruling for the defense. In addition, money judgments must be bonded, and interest accrues during the pendency of appeal. The Class Members still would not have yet received any money during the appeal process, and Class Counsel could have to spend years defending its judgment in possibly several rounds of appeal.

While there are considerable risks associated with a class action trial and resulting appeals, Class Counsel has taken class action cases all the way to the jury trial phase, and stood (and stand) ready and willing to do so again in this case. That said, when presented with a settlement that will benefit the entire class in the very near future, the risk of later potentially recovering nothing, many years later, must be candidly recognized and evaluated. For those reasons, Class Counsel is confident this proposed settlement is in the best interest of the Class.

/ / / /

**B.     The Settlement Resulted from Arm's Length Negotiations Based Upon Extensive Investigation and Discovery.**

The parties have actively litigated this case since it was initially filed on December 6, 2019. There have been ongoing investigations and the exchange of discovery including numerous class member and expert depositions and numerous documents and time punch data analysis. Furthermore, the parties engaged in an arm's length mediation with countless hours of post-mediation settlement discussions with Paul Grossman, Esq., a very well respected, experienced mediator who specializes in resolving wage-and-hour class actions.

During the mediation, the parties exchanged information and discussed all aspects of the case including the risks and delays of further litigation, the risks to both parties, the evidence produced and analyzed, and the possibility of a trial and resulting appeals, among other things. During all settlement discussions, the parties conducted their negotiations at arms' length in an adversarial posture. Arriving at a settlement that was acceptable to both parties was not easy. Defendant and its counsel felt very strongly about Defendant's ability to prevail on the merits at trial. And, Class Counsel believed that they would prevail at trial.

The parties heavily litigated the case up until the settlement was reached. After much consideration by the parties as to their respective positions and risks in continued litigation, the parties agreed that this case was well suited for settlement given the costs and risks both sides faced in further, very protracted litigation. The proposed Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the case might have concluded at trial. The proposed Settlement is based on this incredibly large volume of facts, evidence, and investigation.

**C.     The Settlement Amount is Fair, Reasonable, and Adequate.**

On April 5, 2021, Defendant produced a random sampling of timekeeping data for 1,635 putative class members who worked 590,189 shifts between December 6, 2015 and August 28, 2020. This sample was intended to be a 10% random sample of the putative class members. Based on Plaintiff's expert, Dr. Kriegler's, rounding analysis, 65.7% of the sampled employees were potentially underpaid. Dkt. 46-4 at ¶ 79. Specifically, there were a total of 7,384.14 unpaid

weighted hours due to Hyatt's rounding mechanism and 4,904 unweighted hours. *Id*. When extrapolating this 10% sample across the entire class, this equates to approximately $860,161.60 to $1,298,131.81 in underpayment due to rounding. Dkt. 71-1 at ¶ 6.

It is "well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City and Cty. Of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. "Estimates of a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc. -- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014); *see also Rodriguez*, 563 F.3d at 965 ("In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to the present value.").

The Gross Settlement Amount of $990,000.00 represents approximately 76% of the weighted underpaid hours if the Court granted certification and the Class Members prevailed at trial and succeeded on all subsequent appeals. Dkt. 71-1 at ¶ 7. The Gross Settlement Amount equates to a recovery of approximately $20.19 for each unpaid unweighted rounded hour ($990,000.00/49,040 unpaid unweighted rounded hours = $20.19) and $13.41 for each unpaid weighted rounded hour ($990,000.00 / 73,841 unpaid weighted rounded hour = $13.41). *Id*. On average, each Settlement Class Member is anticipated to receive an Individual Settlement Payment greater than those amounts. *Id*. The highest Individual Settlement Payment to be paid is approximately $62.03 for Settlement Class Members who worked the entire Class Period, while the average Individual Settlement Payment to be paid is approximately $25.44. Dkt. 71-2 at ¶ 13. There is no reason to doubt the fairness of the proposed plan of allocation of the settlement funds because even at the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by

experienced and competent class counsel." *In re American Bank Note Holographies, Inc., Securities Litigation* (S.D.N.Y. 2001) 127 F.Supp.2d 418, 429-30.

In light of the potential risk of certification and the possibility of a defense verdict, Class Counsel believes that the $990,000.00 Gross Settlement Amount is within a reasonable range given the uncertainties of success as well as the costs that would have been associated with a trial of this action. Further, the $990,000.00 Gross Settlement Amount was the result of arms' length negotiations with an experienced mediator. Although the recommendations of Class Counsel are not conclusive, the Court can properly take the recommendations of counsel into account, particularly where, as here, Class Counsel is competent, has experience with this type of litigation, and significant discovery and investigation has been completed. *Newberg* §11.47. Accordingly, the Settlement as a whole is fair, reasonable, in the best interest of the Class Members and the Court should grant final approval.

5.  **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the proposed **$990,000.00** Settlement.

DATED: October 9, 2022                                **PARRIS LAW FIRM**

                                                      By: /s/ Kitty K. Szeto
                                                      Kitty K. Szeto
                                                      Attorneys for Plaintiff and the
                                                      Putative Class