UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE CRUMP,<br><br>    Plaintiff,<br><br>v.<br><br>HYATT CORPORATION,<br><br>    Defendant. | Case No. 20-cv-00295-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL AND GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 70, 71 |

Pending before the Court are Plaintiff's motions for final approval of class action settlement and for attorneys' fees, costs, and incentive award. Dkt. Nos. 70, 71. The Court held a final fairness hearing on November 3, 2022. For the reasons detailed below, the Court **GRANTS** final approval. The Court also **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for attorneys' fees, costs, and incentive awards.

**I.    BACKGROUND**

    **A.    Factual Background**

Plaintiff Christine Crump was employed as a Line Cook at Hyatt House in Emeryville, California from approximately January to June 2019. *See* Dkt. No. 59-2 at ¶¶ 2–3; Dkt. No. 69 ("SAC") at ¶¶ 24–25. Plaintiff contends that Defendant had a timekeeping policy that rounded hourly employees' time to the nearest hour, as opposed to paying them for every minute they were working. *See* SAC at ¶ 31. She further alleges that as a result, Defendant failed to pay overtime and minimum wage; timely pay all wages upon termination; and keep accurate payroll records. *See id.* at ¶¶ 32–46.

//

//

### B. Procedural History

In July 2021, the parties participated in a full-day mediation with mediator Paul Grossman. Dkt. No. 59 at 4. The parties ultimately entered into a settlement agreement, fully executed in February 2022. *See* Dkt. No. 59-1, Ex. 1 ("SA"). Plaintiff filed a motion for preliminary approval on February 8, 2022, *see* Dkt. No. 59, and the Court granted the motion on June 17, 2022, *see* Dkt. No. 66. The parties now seek final approval of the class action settlement and Plaintiff seeks attorneys' fees, costs, and an incentive award for the named Plaintiff. *See* Dkt. Nos. 70, 71.

During the Final Approval Hearing, Class Counsel notified the Court that they had not yet provided the State Attorneys General with notice of the proposed class action settlement as required under the Class Action Fairness Act of 2005 ("CAFA"). The parties provided the notice on November 4, 2022. *See* Dkt. No. 73 at ¶ 4. Under 28 U.S.C. § 1715, an order giving final approval of the parties' proposed settlement may not be issued earlier than 90 days after the notice has been sent—in this case, February 2, 2023. The 90-day period has now expired. No objections were received. *See* Dkt. No. 76. The only communication counsel has received is an email from the Washington State Attorney General's Office, which simply acknowledged receipt of the notice. *See id.* at ¶ 5.

### C. Settlement Agreement

The key terms of the Settlement Agreement are as follows:

Class Definition: The Settlement Class is defined as "all current and former non-exempt, hourly employees working for Defendant in California at any time between December 6, 2015 through June 9, 2019." SA § 1.3.

Settlement Benefits: Defendant will make a $990,000 non-reversionary payment. SA §§ 1.16, 5.1, 5.6. Defendant shall make this payment in two tranches: the first 50% shall be paid ten days after judgment has been entered, and the remaining 50% will be paid six months later.[1] *Id.* at §§ 1.13, 5.1.

---

[1] During the Final Fairness Hearing, counsel confirmed that the administrator will make clear when it sends the first check that it is part of an installment, and will specify when Class Members can anticipate the second check.

1    The parties propose that $50,000 of this gross settlement fund be allocated to the PAGA
2 claim as civil penalties. *See* SA §§ 1.19, 5.5. Of this PAGA Payment, $37,500 will be paid to the
3 California Labor and Workforce Development Agency ("LWDA") and $12,500 will be distributed
4 pro rata to class members. *Id.* at § 5.5; *see also* Cal. Lab. Code § 2699(i) (providing that penalties
5 under PAGA are split 75% to LWDA and 25% to aggrieved employees). The gross settlement
6 fund also includes Court-approved attorneys' fees and costs, settlement administration fees, the
7 employees' share of payroll taxes, any incentive payment to Plaintiff as class representative, and
8 payments to class members. SA § 1.16. The cash payments to the class will be based on the
9 number of weeks each class member worked during the relevant class period. *Id.* at §§ 5.6, 5.6.1.

Release: All Settlement Class Members will release Defendant and its subsidiaries, including Select Hotels Group LLC:

> of and from any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind between December 6, 2015 and the date of Preliminary Approval of the Settlement, for any and all claims asserted or that could have been asserted based on the facts and theory that Defendant or any of the Released Parties maintained a timekeeping system that unlawfully rounded time as alleged in the Second Amended Complaint in the Action, including those for: (1) all claims for alleged failure to pay minimum, straight time, overtime, or double time wages, wages or damages under the FLSA, California law, or common law, based on a theory that Defendant or any of the Released Parties maintained a timekeeping system that unlawfully rounded time; (2) failure to pay final wages due at separation or upon termination; (3) failure to timely pay wages during employment; (4) failure to provide accurate and itemized wage statements; (5) failure to keep requisite payroll records; (6) claims brought under Business & Professions Code section 17200 *et seq.* including, but not limited to, all claims for unfair, unlawful and harmful conduct to class members, the general public and Defendant's competitors and claims of unlawfully gaining an unfair advantage over other businesses based on the facts and allegations contained in the Second Amended Complaint; (7) PAGA claims for civil penalties due to any Labor Code violations by Defendant arising out of or related to events alleged in the Second Amended Complaint including, but not limited to, Labor Code sections 201, 202, 203, 204, 226, 226.3, 510, 1174, 1194, 1197, 1197.1, and 1198; and California Industrial Welfare Commission Wage Orders; (8) penalties of any nature; (9) interest; (10) liquidated damages; (11) attorneys' fees; (12) costs; and (13) any other claims arising out of or related to the Second Amended Complaint filed in the Action through final approval of the Settlement. This Settlement, Settlement Agreement, and the definition of Released Claims expressly exclude all claims pled in *Hartstein v. Hyatt Corporation*,

3

Case No. 2:20-cv-04874-DSF-JPR and *Insixiengmay v. Hyatt Corporation, et al.*, Case No. 2:18-cv-02993-TLN-DB.

*See* SA at §§ 1.26, 1.27, 6.1.

The second checks distributed to class members will also include the following language:

> My signature or cashing of this check constitutes a full and complete release of Hyatt Corporation, and all of their current or former subsidiary or affiliated entities, and their current or former officers, directors, and employees, for any and all claims asserted or that could have been asserted based on the facts alleged in the operative Second Amended Complaint in the lawsuit entitled *Crump v. Hyatt Corporation, et al.* pending in the United States District Court, Northern District of California, designated as Case No. 4:20-cv-00295-HSG, arising during my employment at any time between December 6, 2015 and the date of the Preliminary Approval Order of the Settlement of the lawsuit.

*Id.* at § 5.7.1. During the Final Fairness Hearing the parties agreed that the release language should be included with the second check, rather than the first as initially structured.

## II. DISCUSSION

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on June 17, 2022, this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No. 66 at 4–6.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Where the parties reach a class action settlement prior to class certification, the Ninth Circuit has cautioned that such settlement agreements "'must withstand an even higher level of scrutiny for

4

evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (quotations omitted).

The Ninth Circuit has identified several "subtle signs" the Court should consider to determine whether "class counsel have allowed pursuit of their own self-interests to infect the negotiations." *Roes*, 944 F.3d at 1043. These include: (1) "when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607–08 (9th Cir. 2021) (quotation omitted).

To assess whether a proposed settlement comports with Rule 23(e), the Court may also consider some or all of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See id.* at 609. In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including

5

individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice plan previously approved by the Court was implemented and complied with Rule 23(c)(2)(B). *See* Dkt. No. 66 at 10–11; *see also* Dkt. No. 71-2 ("Mitzner Decl.") at ¶¶ 3–11. As of October 9, Phoenix Class Action Administration Solutions had sent Notice Packets via U.S. first class mail to all 15,870 Class Members on the Class List. *See id.* at ¶ 5. Phoenix made efforts to skip trace and re-mail all returned Notice Packets. *Id.* at ¶¶ 6–7. After these efforts, 254 Notice Packets remained undeliverable. *Id.* In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

In deciding the motion for preliminary approval, the Court considered all three signs of collusion that the Ninth Circuit has identified. *See* Dkt. No. 66 at 7–10; *see also McKinney-Drobnis*, 16 F.4th at 607–08. Nothing in the record changes the Court's preliminary conclusion regarding these factors. The proposed settlement is non-reversionary; notwithstanding any clear sailing provision regarding counsel's request for attorneys' fees, the majority of the monetary settlement will still be distributed to class members; and the Court still carefully scrutinizes the requests for attorneys' fees and incentive awards to ensure Class Members' interests are protected under the settlement. *See* Section II.B below. The Court finds that other factors also indicate that the proposed settlement is fair, adequate, and reasonable.

//

### 1. Strength of Plaintiff's Case, Litigation Risk, and Risk of Maintaining Class Action Status

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the amount offered in settlement is reasonable in light of the complexity of this litigation and the substantial risk that Plaintiffs would face in litigating the case given the nature of the asserted claims. *See* Dkt. No. 71 at 5–7. Were the case to proceed, Plaintiff's counsel has acknowledged they would face difficulties in certifying a class of over 15,000 people when Defendant contends that the rounding policy may have affected individuals differently. *See id.* In reaching a settlement, Plaintiff has ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors also weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement amount falls "within the range of reasonableness" in light of the risks and costs of litigation. *See* Dkt. No. 71 at 8–10; *see also Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (citing cases).

In discovery, Defendant produced timekeeping records for 1,635 putative class members. *See* Dkt. No. 71 at 8–9. These putative class members worked a total of 590,189 shifts between December 6, 2015 and August 28, 2020. *Id.* The parties explain that this was intended to represent a random sample of approximately 10% of the putative class members. *See id.* Plaintiff's expert, Dr. Brian Kriegler, analyzed these records for rounding. *Id.* He determined that

approximately 65% of the sampled employees were potentially underpaid because of the Defendant's rounding policy. *Id.* Specifically, he found that there were a total of 4,904 unweighted hours unpaid because of this policy.[2] *Id.* When Dr. Kriegler extrapolated this across the class, he calculated that Class Members were underpaid approximately $860,161.60 to $1,298,131.81 due to rounding. *Id.* at 9. The $990,000 settlement therefore represents over 75% of the high-end of the recovery Class Counsel would expect if they prevailed at trial. *See id.*

The settlement provides approximately $20.14 for each unpaid unweighted rounded hour. *Id.* Counsel estimates that based on the hours worked during the Class Period, the average recovery for individual Class Members will be approximately $25.44, and the highest individual payment will be approximately $62.03. *See id.* The Court finds that this recovery is significant, especially when weighed against the litigation risks in this case. In any event, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & County of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982). The Court finds under the circumstances that this factor weighs in favor of approval.

### 3. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The parties settled only after conducting significant discovery and investigation into Plaintiff's claims. *See* Dkt. No. 71 at 10. Thus, the Court is persuaded that Class Counsel entered the settlement discussions with a substantial understanding of the factual and legal issues, so as to allow them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 4. Reaction of Class Members

The reaction of the Class Members supports final approval. "[T]he absence of a large

---

[2] During the hearing, counsel clarified that "weighted" hours include overtime hours that the employees were not paid due to the rounding policy. The "unweighted" hours did not account for such overtime. Because this case no longer includes overtime claims, counsel indicated that unweighted hours was a more accurate measure of the relevant underpayment.

number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

As of October 9, Phoenix had received 97 timely requests for exclusion. *See* Mitzner Decl. at ¶ 8.[3] This represents less than one percent of the class. Phoenix also has not received any objections. The Court finds that the minimal number of objections and opt-outs in comparison to the size of the class indicates overwhelming support among the Class Members and weighs in favor of approval of the settlement. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

\*   \*   \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement Class Members received adequate notice. Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**.

**B.  Attorneys' Fees, Costs and Expenses, and Incentive Award**

In its unopposed motion and consistent with the Settlement Agreement, Class Counsel asks the Court to approve an award of $346,500 in attorneys' fees and $97,158.56 in costs. Dkt. No. 70 at 1–12. Counsel also seeks a $10,000 incentive award for the named Plaintiff. *Id.* at 12–14.

//

//

---

[3] Phoenix also received two untimely requests to opt out after the September 19 deadline. The Court confirmed during the hearing that these two requests were also *postmarked* after the deadline.

9

### i. Attorneys' Fees & Costs

#### a. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In a state law action—like this one—state law also governs the calculation of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees. *See Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1264, n.4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures.").

Under California law, the "percentage of fund method" is proper in class actions. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016). In addition, "trial courts have discretion to conduct a lodestar cross-check on a percentage fee." *Id.* The "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). Trial courts "also retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee." *Laffitte*, 1 Cal. 5th at 506. Class Counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted).

#### b. Discussion

Class Counsel here seeks $346,500 in attorneys' fees and $97,158.56 in costs, or $443,658.56 total. *See* Dkt. No. 70. Class Counsel urges that its requested fees are below its lodestar, represent 35% of the $990,000 settlement fund, and are appropriate under the "percentage of fund" method. *See generally* Dkt. No. 70.

Using federal law for guidance, 25% of the common fund is the benchmark for attorney fee awards. *See*, *e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of

10

1  any 'special circumstances' justifying a departure."). The Court considers the reasonableness of
2  the percentage requested in light of the factors enumerated by the Ninth Circuit, with the 25%
3  award as a starting point. That court has identified several factors that a court should consider to
4  determine whether to adjust a fee award from the benchmark: (1) the results achieved; (2) the risk
5  of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and
6  the financial burden carried by the plaintiff; and (5) awards made in similar cases. *See Vizcaino*,
7  290 F.3d at 1048–50.

8  The first and "most critical factor [in determining an attorneys' fee] is the degree of
9  success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). As previously discussed,
10 Defendant produced a random sampling of timekeeping data for putative class members who
11 worked between December 2015 and August 2020. *See* Dkt. No. 71 at 8–9. Plaintiff's expert
12 determined that approximately 65% of the sampled employees were underpaid due to Defendant's
13 rounding policy. *Id.* Extrapolating from this data, the expert concluded that Class Members were
14 underpaid approximately $860,000 to $1.3 million. *Id.* Class Counsel thus reasons that the
15 $990,000 common fund represents approximately 76% of the high-end of the recovery they would
16 expect if they prevailed at trial. *See* Dkt. No. 71 at 9. Moreover, as noted above, no class member
17 objected to the adequacy of the settlement amount. The Court agrees that this represents a good
18 result for class members.

19 This recovery must also be considered in light of the significant risks that Plaintiffs would
20 face in further litigating this case. The risk that further litigation might result in Plaintiffs not
21 recovering at all, particularly in a case involving complicated legal issues, is a significant factor in
22 the award of fees. *See Vizcaino*, 290 F.3d at 1048. As Plaintiffs explained in their motion for
23 final approval, they would face considerable difficulty obtaining a similar recovery through further
24 litigation given the complexity of this case. *See* Dkt. No. 71 at 10. As Class Counsel
25 acknowledged, obtaining class certification in this case would be challenging, particularly given
26 the size of the class. *See id.* at 7.

27 Counsel also litigated this case skillfully and professionally. The risk that counsel took in
28 litigating this case on a contingency basis for the last few years weighs in favor of a substantial

attorneys' fee award. *See Vizcaino*, 290 F.3d at 1050. Courts have found that the importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or as a flat fee. *See id.* And here, counsel spent significant time on this case without any certainty that they would be compensated.

However, the Court is also cognizant of its obligations to review class fee awards with particular rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino*, 290 F.3d at 1052 (quotation omitted). Here, the parties worked efficiently to settle this case, but the Court does not find that the record warrants an award so far above the twenty-five percent benchmark. Nevertheless, the Court finds that some increase is warranted because of the estimated proportion of the recovery in this case. Counsel estimates that the settlement constitutes approximately 75 to 100 percent of the estimated damages due to Defendant's timekeeping policy. *See* Dkt. No. 71 at 8–10. The Court finds that an award of 28% of the fund, or $277,200, is therefore appropriate under the circumstances.

Class Counsel urges that their requested fees are below their lodestar, and thus reasonable. *See* Dkt. No. 70 at 10–11. And as a final check on the reasonableness of fees, the Court may compare the requested fees with counsel's bills under the lodestar analysis. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050–51 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). The Court must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434. Here, the Court finds that counsel's proffered lodestar does not provide a useful indicator of reasonableness. Rather, it appears artificially inflated and does not support an award of 35% of the fund.

12

In support of the motion for attorneys' fees, Class Counsel initially calculated that it spent 908 hours on this case, with a lodestar of $499,500 as of the filing of the motion for attorneys' fees. *See* Dkt. No. 70 at 11. In support of this calculation, counsel provided a "summary chart" of the time spent on the case for various categories of work, such as "investigation," "appearances," "pleadings and filing," "law and motion," and "discovery." *See* Dkt. No. 70-1, Ex. A. Rather than break down the time spent by the billable rate for each of the attorneys who worked on the case, counsel just applied a flat $550 hourly rate for all 908 hours worked.[4] *See* Dkt. No. 70-1 at ¶ 5. During the Final Approval Hearing, the Court indicated that it would need more detailed records to support the request for fees. Counsel suggested that meeting this concern might be difficult because it does not prepare bills for its clients and the records from the firm's timekeeping software could be voluminous. The Court nevertheless issued an order requesting more detailed attorney billing records for in camera review, explaining that the summary chart was insufficient. *See* Dkt. No. 75.

In response, Class Counsel produced more records and an updated summary chart. Class Counsel also recalculated its lodestar as $431,327.50 for 925 hours of work spent on this case. In producing more detailed records, counsel increased the number of hours by 17, but then somehow reduced its lodestar by over $68,000. Having reviewed the billing records in more detail, the Court finds that the records still lack important detail, and that Class Counsel's recalculated lodestar contains some inefficient and unreasonable time. *See Jankey v. Poop Deck*, 537 F.3d 1122, 1132 (9th Cir. 2008) (directing courts to exclude from a fee request any hours that are "excessive, redundant, or otherwise unnecessary").

As an initial matter, it still is not clear, even from Class Counsel's supplemental filings, how many people actually worked on this case. Without more information about the size and nature of the case team, the Court has serious concerns about the prospect of inefficiencies in communicating about and performing tasks. Class Counsel's records indicate that six individual attorneys, an unidentified number of "post-bar law clerks," and one legal assistant worked on this

---

[4] 908 x $550 = $499,400.

13

case. Counsel lists significant time incurred by "post-bar law clerks" with less than one year of experience—including 93.6 hours spent on the motion for class certification—but does not identify any individuals by name or even identify how many such law clerks there were on this case. This omission is particularly concerning in light of the Court's specific direction that it needed more detailed billing records about which attorney(s) worked on which task(s) to support the fees request, because "[w]ithout this level of detail, the Court cannot assess the reasonableness of the time spent, and the fees requested, in this case." *See* Dkt. No. 75. Class Counsel also uses an hourly rate of $375 for these clerks, the same rate as the first-year associate on the case. Yet it is not clear if any of these "post-bar law clerks" were actually admitted to practice law while working on this case. Assuming they were not, it would be unreasonable to assign them the same market rate as a licensed attorney. Class Counsel suggests that its proposed rates have been approved "by the United States District Court for the Central District of California in 2021 for attorneys with similar years of experience," but has not provided any case citations or other support for its proposed hourly rates.

        The Court's concern about inefficiencies appears borne out by the billing records themselves. For example, Class Counsel claims that it spent 234.60 hours on "Drafting, Filing and Service of Plaintiff's Motion for Class Certification." In contrast, Class Counsel only appears to have spent approximately 50 hours preparing the motion for preliminary approval, the motion for final approval, *and* the motion for attorneys' fees. Although the Court acknowledges the complexity of motions for class certification, the Court finds that over 200 hours spent on a single motion is still excessive under the circumstances, particularly here where briefing was never finished because of the parties' settlement. In yet another example, counsel's summary table says that it billed over 12 hours to draft a single-page stipulation to amend the reply deadline and hearing date for the motion for class certification. This much time is not reasonably billed for preparation of such a straightforward document. But perhaps more concerning, when the Court tried to identify the underlying billing entries to support this time, it found only one entry for .10 hours spent reviewing this stipulation. The Court could not identify any of the other 12.3 hours

14

purportedly spent on this task.[5]

The Court also identified time that appears unrelated to this case or is otherwise due to inattentiveness. For example, counsel's records include time spent at appearances for case management conferences, looking for tentative rulings, and appearing at a hearing on a motion for summary judgment in a different case, *Reeves v. Hyatt Corporation*. Although these are just a few examples, the Court finds that they undermine the reliability of all Class Counsel's representations.

Counsel suggested in its supplemental filing that the Court may find it difficult to parse through the billing records "because the notes and abbreviations entered by an attorney of what task is being performed may not always be self-explanatory." But counsel bears the burden of supporting its own fee request, and the Court does not—and should not—simply accept counsel's claims without further inquiry. *See Vizcaino*, 290 F.3d at 1052 (cautioning against "[r]ubber-stamp approval" of fee requests). The Court gave counsel ample opportunity to support its requested fees with detailed information, but the Court finds that Class Counsel's records raise more questions than they answer. Therefore, to the extent Class Counsel suggests that a comparison to the lodestar establishes the reasonableness of their requested 35% of the fund (or $346,500) as attorneys' fees, the Court disagrees. Counsel has not provided any basis for the large upward departure requested from the twenty-five percent benchmark in this case. The Court accordingly finds that an award of 28% of the fund, or $277,200, is reasonable under the circumstances.

An attorney who has created a common fund for the benefit of the class is also entitled to reimbursement of reasonable litigation costs from that fund. *See Harris*, 24 F.3d 16 at 19 (quotations omitted). Class Counsel is thus entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Id.* The Court finds that counsel's requested expenses are reasonable and grants the request. *See* Dkt. No. 70 at 12; Dkt. No. 70-1, Ex. C.

\* \* \*

---

[5] To the extent counsel intended to state that they spent 12 minutes—rather than 12 hours—preparing the document, this further highlights the unreliability of their representations.

1  The Court accordingly **GRANTS IN PART** the request for attorneys' fees and costs, and
2  awards to Class Counsel $277,200 in attorneys' fees and $97,158.56 in costs, for a total of
3  $374,358.56.

### ii. Incentive Awards

Lastly, Class Counsel requests an incentive award of $10,000 for named Plaintiff Christine Crump. *See* Dkt. No. 70 at 12–14. District courts have discretion to award incentive fees to named class representatives. *See In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). "Service awards as high as $5,000 are presumptively reasonable in this judicial district." *See Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *12 (N.D. Cal. Apr. 19, 2021). However, the Court shares the Ninth Circuit's concern that "if class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *See Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003); *Radcliffe v. Experian Information Sols. Inc.*, 715 F.3d 1157, 1163–64 (9th Cir. 2013) (noting that the Ninth Circuit has "expressed disapproval of these incentive agreements" and that "in some cases incentive awards may be proper but . . . awarding them should not become routine practice"). The Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe*, 715 F.3d at 1165 (quotations omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.*

Class Counsel represents that the named Plaintiff closely participated in every aspect of this case. *See* Dkt/ No. 70-1 ("Szeto II Decl.") at ¶ 9. She produced relevant employment records and remained available to counsel during the course of this litigation. *See id.* Counsel also emphasized that Ms. Crump took a substantial reputational risk in bringing this case. *Id.* Ms. Crump also sat for a full-day deposition, and estimates that she spent over 35 hours working on this case. *See* Dkt. No. 70-2. However, Ms. Crump is seeking almost 400 times the amount of the average recovery for each Class Member in this case. The Court does not minimize Plaintiff's role in enabling a highly favorable result for her fellow Class Members, but considering all the

16

circumstances of this case, the Court finds that the presumptive $5,000 service award is reasonable to compensate Plaintiff for her efforts. The Court therefore **GRANTS IN PART** the request for an incentive award in the amount of $5,000.

## III. CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement and **GRANTS IN PART** and **DENIES IN PART** the motion for attorneys' fees and incentive award. The Court awards attorneys' fees in the amount of $277,200; costs in the amount of $97,158.56; and an incentive award to the named Plaintiff in the amount of $5,000.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are further directed to file a short stipulated final judgment of two pages or less within 21 days from the date of this order. The judgment need not, and should not, repeat the analysis in this order.

**IT IS SO ORDERED.**

Dated: 2/14/2023

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

17